Donald J. KOSSMAN and Warren Jodar, Plaintiffs–Appellants, Cross–Appellees,

v.

CALUMET COUNTY, Defendant–Appellee, Cross–Appellant.

Nos. 87–1401, 87–1439.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 1987.

Decided June 20, 1988.

Robert W. Lutz, Bonk, Lutz, Burnett & McDermott, Derek McDermott, Chilton, Wis., for plaintiffs-appellants, cross-appellees.

David Leo Uelmen, Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, Chilton, Wis., for defendant-appellee, cross-appellant.

Before WOOD, Jr., COFFEY, and RIPPLE, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

This is the second time an appeal in this matter has been before this court. The first appeal resulted in a holding that Calumet County had willfully discriminated against Donald Kossman and Warren Jodar in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634. *Kossman v. Calumet County*, 800 F.2d 697, 704 (7th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1294, 94 L.Ed.2d 151 (1987). Because willfulness triggers the liquidated damages provisions of the ADEA, the case was remanded to the district court for a determination of the amount of such damages to be awarded Kossman and Jodar. This court also directed the district court to determine what insurance premiums and overtime wages, if any, were recoverable from the County. On remand, the district court calculated the amount of compensatory damages (including health insurance and overtime wages) and subtracted any amounts in mitigation to derive the liquidated damages award. Awarding an amount equal to the compensatory damage award is the method prescribed by the ADEA to determine the amount of liquidated damages. The district court also awarded Kossman and Jodar attorney's fees incurred in bringing the first appeal.

In the present appeal Kossman and Jodar challenge the method of calculating liquidated damages, arguing that the proper method requires figuring the amount prior to subtracting any amounts in mitigation. The plaintiffs-appellants also challenge as inadequate the amount of the attorney's fees awarded. Calumet County cross appeals, claiming that the retirement benefits and health insurance premiums should not have been included in the amount used to determine liquidated damages and that there was insufficient evidence to support a recovery of overtime

wages. We vacate the attorney's fees award and remand for further proceedings. As to all other issues, we affirm.

## I. BACKGROUND

We will accompany our discussion of the issues with the facts pertinent to each. For a full recital of the factual background of this case see *Kossman v. Calumet County*, 800 F.2d at 698–99.

## II. DISCUSSION

*ADEA Liquidated Damages*

■ We are asked to determine whether an award of liquidated damages pursuant to the ADEA is calculated before or after any amounts in mitigation have been subtracted from the compensatory damages amount. If the determination is made before mitigation, Kossman receives liquidated damages of approximately $104,000 and Jodar approximately $82,000, whereas if the determination is made after mitigation, Kossman receives liquidated damages of approximately $47,000 and Jodar approximately $32,000. The district court chose the latter, relying on a Fourth Circuit decision, *Fariss v. Lynchburg Foundry*, 769 F.2d 958, 967 (4th Cir.1985).

Kossman and Jodar argue that this circuit's *Orzel v. City of Wauwatosa Fire Dep't*, 697 F.2d 743 (7th Cir.), *cert. denied*, 464 U.S. 992, 104 S.Ct. 484, 78 L.Ed.2d 680 (1983), reached a contrary conclusion and requires that we reverse the district court decision. *Orzel* affirmed a magistrate's decision that held the plaintiff had demonstrated a willful violation of the ADEA and

therefore was entitled to liquidated damages. *Id.* at 759–60. The magistrate's Decision and Order stated that "[t]he amount of mitigation should be deducted only after computing the total damage award which includes liquidated damages. To rule otherwise and reduce actual damages prior to calculating liquidated damages would unfairly penalize plaintiff who was under a duty to mitigate." *Orzel v. City of Wauwatosa Fire Dep't*, No. 79–C–444, Decision and Order at 22 (E.D.Wis. filed Aug. 21, 1981). *Orzel* is neither controlling nor persuasive in the circumstances of the present case because the correctness of the magistrate's decision to mitigate *after* calculating liquidated damages was not argued to the *Orzel* panel. On this issue *Orzel* does no more than hold that liquidated damages were awardable.

This issue was expressly decided, however, on September 23, 1987, in an opinion released on the day oral argument was held in this case. *Coston v. Plitt Theatres, Inc.*, 831 F.2d 1321, 1330 (7th Cir.1987), held, in pertinent part, that "the amount of actual harm done the plaintiff must be determined prior to doubling the damage award as required to establish liquidated damages. Therefore any amounts earned in mitigation of the backpay compensatory award must be deducted *prior* to doubling."[1] The Supreme Court has recently vacated the judgment in *Coston* and remanded for further proceedings to consider the issue of willfulness, which is not an issue here, and in a separate decision the Court has denied review of *Coston*'s method of calculating liquidated damages.[2] We

1. Liquidated damages under the ADEA and FLSA are commonly discussed in terms of an "additional equal amount" or a "doubling" of the award. These terms are equivalent and indicate that the final damages tally under the ADEA, including a liquidated damages amount, is an amount equal to twice the amount of compensatory damages or pecuniary loss suffered by the plaintiff.

2. Two separate petitions for the Writ of Certiorari in the *Coston* case were submitted to the United States Supreme Court. The first sought review of the jury instruction regarding willfulness and of the reasons offered for dismissal (pretext). That petition, addressing issues not

raised in this case, was granted, and this circuit's *Coston* judgment was vacated and the case remanded for further consideration in light of *McLaughlin v. Richland Shoe Co.*, — U.S. —, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). *Coston*, — U.S. —, 108 S.Ct. 1990, 100 L.Ed.2d 223 (1988). *McLaughlin* discusses the meaning of the word "willful" as used in determining the applicable statute of limitation in a Fair Labor Standards Act suit. — U.S. at — —, 108 S.Ct. at 1677–81. The second petition sought review of the method of calculating liquidated damages, whether the calculation is made prior to subtracting amounts in mitigation, which is the issue before us. The Court denied review of

find the *Coston* reasoning regarding the calculation method sound and adopt that reasoning as our own. *See id.* at 1328–30. The method that we adopt is the same as that utilized in the Fourth Circuit's *Fariss* decision, relied on by the district court when it subtracted the amounts in mitigation prior to doubling. Therefore the district court correctly computed the liquidated damages.

## Attorney's Fees and Costs

In the district court Kossman and Jodar sought an award of attorney's fees and costs incurred in successfully bringing the first appeal in this case. The district court determined that 175 hours at $80 an hour represented the reasonable hours and hourly rate, respectively, for the appeal. The district court also awarded costs of $571. In their brief Kossman and Jodar complain that they reasonably incurred 225 hours (the district court's Decision and Order, as well as the plaintiffs' fee application to the district court, shows that fees for 235 hours were requested) and should have been compensated for these hours. Likewise they argue that they incurred necessary costs for such items as the filing and docketing fee, long distance telephone charges, meals and lodging, postage, and mileage to Chicago, and that the mere award of statutory costs was insufficient.

Kossman and Jodar also note that upon remand from the first appeal they asked the district court to reconsider its earlier determination that only 400 of the 851 hours requested for trial work would serve as the basis for an award of attorney's fees. The plaintiffs argue that the district court had reduced the amount by the hours spent on preparation and presentation of the liquidated damages claim, which the district court originally denied, and once the liquidated damages claim was deemed meritorious by this court, the compensable hours must be adjusted upward. The district court considered the matter and left its earlier fees determination undisturbed. The trial fees issue was not raised in the first appeal, and Kossman and Jodar do not explain how this issue is now properly before us. Without more we will not review the earlier award but instead will proceed to review only the award of attorney's fees and costs incurred in bringing the first appeal.

"The district court, in its discretion may set the amount of attorneys' fees awarded." *Freeman v. Franzen*, 695 F.2d 485, 494 (7th Cir.1982), *cert. denied*, 463 U.S. 1214, 103 S.Ct. 3553, 77 L.Ed.2d 1400 (1983). "Appellate review of a district court's discretion is very limited. Generally, an abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court. If reasonable persons could differ, no abuse of discretion can be found." *Harrington v. De-Vito*, 656 F.2d 264, 269 (7th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982). The district court's entire discussion regarding fees and costs is contained in one brief paragraph:

> The plaintiffs maintain that they are entitled to $29,375 (235 hours × $125 per hour) in attorney fees. I have reviewed the affidavits filed by the plaintiffs' attorneys, and I find that a reasonable award is $14,000. This represents 175 hours at a rate of $80 an hour. The plaintiffs are also entitled to recover $571 in costs.

*Kossman v. Calumet County*, No. 81–C–419, Decision and Order at 5 (E.D.Wis. filed Feb. 18, 1987). We are not concerned with the genesis of the $80 figure because in this appeal Kossman and Jodar do not specifically challenge the amount of the hourly rate, however, we do concern ourselves with the genesis of the district court's 175 hour award. A review of the record does not suggest an obvious basis for the reduction from 235 hours to 175 hours. (Calumet County suggests that the reduction may be the district court's carryover of its reasoning from its award of fees for trial work in which it awarded substantially less than requested because "it took 4 days of trial to put in the evidence[, and it] should have been presented in no more than the two days originally set as an estimate.")

that petition. —— U.S. ——, 108 S.Ct. 1471, 99    L.Ed.2d 700 (1988).

The choice is important because using the 235 figure generates an attorney's fees award of $18,800 whereas the 175 figure generated the court's actual award of $14,-000, a difference of $4,800. As for the $571 award of costs, apparently the amount is the total of Kossman and Jodar's docketing fee ($65) and the costs of copying and collating the briefs and appendix ($506), which they submitted in their bill of costs pursuant to Federal Rule of Appellate Procedure 39. The district court's Decision and Order does not mention the other costs submitted by Kossman and Jodar, which included travel, postage, and telephone expenses totalling $633.90.[3]

This circuit's *Heiar v. Crawford County,* 746 F.2d 1190 (7th Cir.1984), *cert. denied,* 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985), decided an attorney's fees issue under the ADEA.

> The judge thought the fee request excessive and he may well have been right. But rather than indicating which parts of the request he thought excessive, the judge simply cut the whole thing in half. This would be an appropriate way of proceeding in a case where the amount requested was small. If the plaintiffs were requesting, say, $1,000, it would not be worth the judge's time to pore over the details of the request. As a former practitioner, he could quite properly use his impression of prevailing market rates in his district to cut down the request. But where as in this case the request is for a large amount of money, here more than $50,000, the judge must do more than eyeball the request and if it seems excessive cut it down by an arbitrary percentage. He has to make a judgment—considering the nature of the case and the details of the request, taking evidence if need be, and defending his judgment in a reasoned (though brief) opinion—on what the case should have cost the party who submitted the request.

*Id.* at 1204. Here, as in *Heiar,* the request for a large sum of money, in excess of $29,000, was reduced for reasons that are not contained in the record. This amount is not so small that it would waste valuable judge time to more thoroughly consider the details of the fee request. It may very well be that the district court undertook such a process, however, we cannot discern the court's reasoning from either the single paragraph quoted above or from the information we have gleaned from the record. Therefore, we vacate the award of attorney's fees and remand for further proceedings. On remand the district court's task should not be unduly burdensome; it need only set out its judgment in a reasoned opinion, which, as *Heiar* suggests, should be brief.

The reasoning of the district court in reaching its decision regarding costs is also missing from the record. We can only speculate as to why the non-statutory costs were denied. It may be that the district court believed such costs were not allowed, however, a per se foreclosure of such costs runs contrary to *Heiar:* "expenses of litigation that are distinct from either statutory costs or the costs of the lawyer's time reflected in his hourly billing rates—expenses for such things as postage, long-distance calls, xeroxing, travel, paralegals, and expert witnesses—are part of the reasonable attorney's fees allowed by the Civil Rights Attorney's Fees Awards Act." 746 F.2d at 1203. "Although the Age Discrimination in Employment Act is not a civil rights act within the meaning of section 1988[, the Fees Awards Act], age discrimination cases commonly cite section 1988 cases on fee questions...." *Id.* Whatever the court's reasoning, it is clear that the fees denied here may be awardable. Therefore we vacate the district court's decision regarding costs and remand for further proceedings. As with the remand of the attorney's fees issue, the district

---

**3.** In addition to the statutory fees, Kossman and Jodar sought reimbursement for a "filing and docketing fee" of $70.00, long distance telephone calls costing $104.48, Chicago meal and lodging expenses of $317.04, a "filing fee" of $5.00, mileage costs of $117.00 (520 miles × $0.225 per mile), and postage costs of $90.38. Subtracting the $571.00 awarded from the $1,204.90 sought by Kossman and Jodar leaves $633.90 currently disputed by the plaintiffs.

court should clearly set out its reasoning, but it may do so as briefly as is practicable.

*Cross Appeal*

■ As this court stated in the first appeal, "backpay awards under the ADEA fall within the discretion of the trial court and should not be disturbed absent an abuse of discretion." *Kossman v. Calumet County*, 800 F.2d 697, 703 (7th Cir. 1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1294, 94 L.Ed.2d 151 (1987); *accord Syvock v. Milwaukee Boiler Mfg. Co.*, 665 F.2d 149, 160 (7th Cir.1981). Calumet County repaid the Wisconsin Retirement Fund so that Kossman and Jodar's current account status was the same as if payments had never been interrupted by the forced retirement. The County argues that Kossman and Jodar "did not 'lose' this money. They received this money and used it during their retirement. The County put it back. Therefore, it is *not* a proper subject to be included when calculating a wage *loss.*" (Emphasis in original.) Apparently the County is referring to benefits paid to Kossman and Jodar during retirement, although we are not certain because the County quotes a portion of the district court decision that refers to the County's contributions to the Fund. If the County asserts as error the district court's treatment of the benefits paid, it loses. The benefits were considered as mitigation and *not* included in the lost wages from which the liquidated damages were calculated. Alternatively, if the County's claim is that the district court erred regarding the contributions, it likewise loses. Certainly the contributions were added to the wages and used in the liquidated damages calculation, but the County has failed to explain why the restoration of the accounts through these contributions, accomplished after the ADEA violation had been established, is not part of the lost wages subject to doubling. The district court did not err.

■ Calumet County also argues, in a cursory fashion, that health insurance benefits that it repaid are not includable in the award subject to doubling. "The inclusion of the cost of health insurance benefits in the award is discretionary with the trial court...." *Syvock*, 665 F.2d at 161. The County's only support for their claim of error is that "[t]he liquidated damage provisions of the Fair Labor Standards Act authorizes only *wage* loss when calculating the liquidated damage portion of the final award." The County concludes that the trial court had the statutory authority under the 'equity' provisions to order the retirement accounts reestablished, and the health insurance benefits paid, but it had no statutory authority to include those fringe benefit items in the calculations of liquidated damages." The County cites one case for this proposition, *Blackwell v. Sun Elect. Corp.*, 696 F.2d 1176 (6th Cir. 1983), in which that court added an amount in health insurance benefits to the total damage award after the liquidated damages amount had been calculated. However, the *Blackwell* court did not expressly decide whether such benefits should be included in the compensatory amount used to calculate liquidated damages. *Blackwell* does not persuade us that the district court abused its discretion.

The ADEA is "enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of [the Fair Labor Standards Act]." 29 U.S.C.A. § 626(b) (West 1985). The relevant portion of the FLSA states that an offending employer "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C.A. § 216(b) (West Supp.1987). The ADEA deems what it labels "amounts owing" as "unpaid minimum wages ... or unpaid overtime compensation" for purposes of section 216(b). 29 U.S.C.A. § 626(b) (West 1985). Thus a calculation of amounts owing provides the compensatory or pecuniary loss necessary to determine liquidated damages pursuant to section 216(b) as applied to the ADEA. Amounts owing includes "items of pecuniary loss or economic loss such as wages, fringe, and other job-related benefits." H.R.Conf.Rep. No. 950, 95th Cong., 2d Sess. 13, *reprinted in* 1978 U.S.Code Cong.

& Admin.News 504, 528, 535. The County has not argued that health insurance premiums (or the Pension Fund contributions discussed above) are not job-related or fringe benefits. Therefore here the health insurance premiums are included in "amounts owing," which is within the reach of the Act's wage definition used to calculate liquidated damages. In dicta, several Seventh Circuit cases have essentially stated the same: "an award of liquidated damages under 29 U.S.C. § 626(b) (1976) essentially doubles the plaintiff's recovery of backpay and *benefits.*" *Orzel v. City of Wauwatosa Fire Dep't*, 697 F.2d 743, 757 n. 27 (7th Cir.1983) (emphasis added); *accord Syvock*, 665 F.2d at 151. The Fourth Circuit's *Fariss v. Lynchburg Foundry* specifically included life insurance premiums in its calculation of compensatory or pecuniary damages subject to mitigation and doubling. 769 F.2d 958, 964–67 (4th Cir.1985). The County has offered no persuasive authority to contravene the express language of the ADEA and FLSA. The district court's inclusion of health insurance benefits in its calculation of damages subject to doubling was not an abuse of discretion.

■ Finally, Calumet County claims that the district court's decision regarding overtime pay is not supported by the evidence. The following paragraph contains the district court's entire discussion of damages for overtime:

> Up first for consideration are the plaintiffs' figures for overtime pay. The County contends that the plaintiffs should not receive any awards for overtime pay. I find, based on the stipulations submitted by the parties earlier in this lawsuit, that the plaintiffs are entitled to overtime pay in the amounts of $5,046 for Kossman and $1,733 for Jodar.

*Kossman v. Jodar*, No. 81–C–419, Decision and Order at 3 (E.D.Wis. filed Feb. 18, 1987). The stipulation referred to by the district court is a stipulation as to the average hours of overtime worked by all employees in a given employment category. According to the stipulation, investigators, such as Kossman, worked an average of 61.75 hours in 1981, 84.51 hours in 1982, 88.35 hours in 1983, and 54.65 hours in 1984 (only through May 12, 1984). Traffic officers, such as Jodar, worked an average of 32.74 hours in 1981, 7.97 hours in 1982, 72.96 hours in 1983, and 13.86 hours in 1984 (only through May 12, 1984).

The affidavit of John Keuler, Administrative Coordinator for Calumet County, which was submitted with Calumet County's response to the attorney's fees and additional damages motion filed by Kossman and Jodar, is the only support for the County's position. Relying on this affidavit, the County in its brief points out that overtime is voluntary and can be refused. It also points out that Kossman worked "only 30.82 hours in 1985 and 3 hours in 1986 (through October)," but fails to mention that Kossman's 1985 total was accumulated in a partial year, beginning in April. Calumet County states nothing regarding Jodar's overtime record, except to mention that "Jodar worked only 15 months after reinstatement and retired." In reviewing the record we find that in arguing for overtime wages before the district court Kossman and Jodar relied on the stipulation to calculate the appropriate amount of the overtime award. The district court did the same.

■ We review the district court's decision under an abuse of discretion standard. As we set out earlier, "an abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court. If reasonable persons could differ, no abuse of discretion can be found." *Harrington v. DeVito*, 656 F.2d 264, 269 (7th Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982). Here, unlike our discussion of attorney's fees above, the district court set out the source of its calculation of overtime wages, the stipulated average for all workers. Even though it might reasonably be asked on what basis Kossman and Jodar were deemed to fit under the stipulated average, certainly a reasonable person could take the view that the stipulated average was the most appropriate source from which to derive damages. Arguing that Kossman

or Jodar may have decided to work little or no overtime, or may have been injured, thus eliminating the ability to work any overtime, is too speculative to impugn the district court's reasonable attempt to calculate lost overtime wages. Although we find no abuse of discretion, we suggest that the district court more explicitly set out its reasoning in the future. A district court invites challenges or unnecessary reversals of its decisions when the record does not reveal the basis for the exercise of discretion as sound as it may be.