Sam T. COSTON, Plaintiff,

v.

PLITT THEATRES, INC., a corporation, Defendant.

No. 83 C 618.

United States District Court,
N.D. Illinois, E.D.

Aug. 31, 1989.

Dan Mathless, Chicago, Ill., for plaintiff.

Sidney Z. Karasik, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

In March of this year, after six years of litigation, two trips to the Seventh Circuit, and one trip to the United States Supreme Court, the plaintiff, Sam T. Coston, settled the remaining substantive issue in his Age Discrimination in Employment Act ("ADEA") suit against Plitt Theatres, Inc. Despite this settlement, some important loose ends remain. In particular, Coston and Plitt reserved three collateral issues for this court: attorney's fees, costs, and an award of interest on Coston's settlement award. The parties have now briefed these issues, and for the reasons set forth below, we award attorney's fees in the amount of $117,553.50 and costs in the amount of $1,886.76. We deny the request for interest.

### I. Background

#### A. *Original Proceedings in the District Court*

Coston originally brought suit against Plitt in January 1983. The case was assigned to Judge Stanley J. Roszkowski, and in March 1984, a jury found for Coston, and in a special interrogatory, found that Plitt's discrimination was willful. The jury verdict did not resolve all the issues, so in October 1984, Judge Roszkowski awarded Coston $77,420.10 in back pay and $72,-023.30 in liquidated damages for the willful violation of the ADEA. However, Judge Roszkowski denied Coston's request for frontpay or reinstatement and his request

for pre-judgment interest. Both sides then filed post-trial motions, and in December 1984, Coston petitioned for attorney's fees. In June 1986, the Court granted Coston's post-trial motion in part, denied it in part, and denied Plitt's post-trial motion in its entirety. The court also ruled that the award of post-judgment interest would run from the date of the verdict rather than the date of the final judgment. Later that same month, the court granted Coston all of the hours he had requested in attorney's fees, but refused his request for the use of a multiplier, and awarded fees in the amount of $35,408.50 both for the trial and for the post-trial motions.

### B. Seventh Circuit—Coston I

Plitt then appealed to the Seventh Circuit, challenging the discrimination verdict, the finding of willfulness, the computation of liquidated damages for the willfulness award and the amount of attorney's fees. In turn, Coston filed a cross-appeal on the denial of reinstatement, frontpay, and pre-judgment interest. The Seventh Circuit denied Coston's entire cross-appeal, and denied Plitt's challenges to the discrimination and the willfulness verdicts. However, the Court also reversed Judge Roszkowski's calculation of liquidated damages, and remanded for a recalculation. According to the Court, amounts earned in mitigation of the backpay award must be deducted before doubling for liquidated damages, rather than after doubling. In this case, based on the facts that Judge Roszkowski already found, the Seventh Circuit's method of calculation would have resulted in a liquidated damages award equal to the compensatory award, $37,420.10.[1] The court also upheld the award of fees in its entirety, even though Coston had been unsuccessful on his demands for reinstatement and frontpay. *Coston v. Plitt Theatres, Inc.*, 831 F.2d 1321 (7th Cir.1987) ("*Coston I*").

### C. The Supreme Court

Plitt petitioned for a writ of certiorari to the United States Supreme Court. It is not clear from the materials before us what issues Plitt challenged in its petition. After Plitt's petition, Coston filed his own petition for certiorari, apparently only on the limited issue of how liquidated damages should be calculated. In April 1988, the Supreme Court denied Coston's petition for a writ of certiorari. 485 U.S. 1007, 108 S.Ct. 1471, 99 L.Ed.2d 700 (1988). In May 1988, the Court granted Plitt's petition, vacated the entire judgment, and remanded the case for further consideration in light of *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). 486 U.S. 1020, 108 S.Ct. 1990, 100 L.Ed.2d 223 (1988).

### D. Seventh Circuit—Coston II

On remand, the Seventh Circuit readopted its original opinion in *Coston I* on all issues but two. First, the Court concluded that its standard for willful violations of the ADEA—which was first announced in *Syvock v. Milwaukee Boiler Manufacturing Co.*, 665 F.2d 149 (7th Cir.1981), adopted by Judge Roszkowski in his jury instructions at trial, and reaffirmed in *Coston I*—could no longer stand in light of the Supreme Court's decision in *Richland Shoe*. Accordingly, the Court overruled *Syvock* and remanded for retrial on the issue of willfulness. Second, because Coston was "no longer the 'prevailing party' as to all issues appealed," the Seventh Circuit directed the trial court to redetermine the award of attorneys' fees for redetermination at the end of the new trial. 860 F.2d 834 (7th Cir.1988) ("*Coston II*").

### E. Return to the Trial Court

After remand, this case was reassigned to our calendar. In December 1988, Plitt satisfied Coston's reinstated backpay award by paying him $61,123.37, which represents the $37,420.10 originally awarded plus interest from the date of judgment. From this award, Coston paid his attorney based on the contingent fee agreement that he had signed. In March 1989, the parties agreed to a settlement of the remaining substantive issue, the claim of willfulness, with Plitt paying Coston $28,500. Coston paid his attorney a percentage of the settle-

---

1. Since the amount of backpay and the amount in mitigation had already been determined, it is not clear to us why the Seventh Circuit remanded for recalculation.

ment, again based on the contingent fee. The parties, however, reserved certain issues for our decision, specifically, attorney's fees, costs and an award of interest on the settlement amount. It is to those issues that we now turn.

## II. Attorney's Fees

### A. *What Law Applies*

Section 7(b) of the ADEA, 29 U.S.C. § 626(b), by incorporating 29 U.S.C. § 216(b), provides for an award of attorney's fees and costs where a judgment is awarded to the plaintiff. Even though they are not directly applicable, courts often apply decisions under the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988, to requests for fees under the ADEA. *See Kossman v. Calumet County*, 849 F.2d 1027, 1031 (7th Cir.1988). This case is no exception; both the parties and the Seventh Circuit have applied section 1988 precedent, and we will do the same here.

### B. *Is Coston Now Only a Partially Prevailing Party?*

■ After the original trial, Judge Roszkowski awarded Coston $35,408.50 in attorney's fees both for the trial and for post-trial proceedings. This figure represented 358.00 hours of attorney time and 60.25 hours of paralegal or law clerk hours, all the hours that Coston had requested. However, Judge Roszkowski denied the request for a multiplier. On appeal, in *Coston I*, Plitt argued that since Coston had failed to win frontpay or reinstatement, he was not entitled to a full award of fees. The Seventh Circuit rejected this argument, because Coston "achieved substantial relief on the claims brought and lost no separable claim. Frontpay was merely a possible component of relief, not a separate cause of action." 831 F.2d at 1337 (citing *Hensley v. Eckherhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Spanish Action Committee of Chicago v. City of Chicago*, 811 F.2d 1129 (7th Cir.1987)).[2]

After the Supreme Court remanded the case, the Seventh Circuit left the question

of attorney's fees for determination by the trial court, because Coston was "no longer the 'prevailing party' as to all issues appealed." *Coston II*, 860 F.2d at 835. Coston argues that since he has now received $28,500 a settlement for the willfulness portion of his claim, he should again be entitled to a full award of fees.

■ We agree. Although there has been no trial, Coston has received money for the willfulness issue. It does not matter that the money came by way of settlement; as the Seventh Circuit has held, "A plaintiff can 'prevail' in a lawsuit without getting everything he asked for (few plaintiffs get everything they ask for), and if he can get it by a settlement, and thereby spare the parties and court the burden of trial, so much the better." *Larsen v. Sielaff*, 702 F.2d 116, 117 (7th Cir.), *cert. denied*, 464 U.S. 956, 104 S.Ct. 372, 78 L.Ed.2d 330 (1983). As a result, Coston should be considered a prevailing party on willfulness. Having prevailed on both discrimination and willfulness, Coston is in essentially the same position he was after *Coston I.* As outlined above, the Seventh Circuit thought Coston was entitled to full fees then, since he had "achieved substantial relief on the claims brought and lost no separable claim." *Coston I,* 831 F.2d at 1337. We see no good reason why the result should be different now.

Plitt argues, however, that because Coston received less than he was awarded the first time around, and less than the amount he sought on remand, he is entitled to less in attorney's fees, too. Plitt relies heavily on the Supreme Court's decision in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), in which the Court identified two categories of cases where reduction of fees would be appropriate. The first category includes cases where the plaintiff has brought distinctly different claims, based on different facts and legal theories, but has succeeded on fewer than all of the claims. The Supreme Court held that a plaintiff in such a case may not recover attorney's fees for time expended

---

**2.** The Seventh Circuit upheld the full award of fees even though it remanded the award of

liquidated damage for a downward recalculation.

on an unsuccessful claim if the claim is "distinct in all respects from his successful claims." *Id.* at 440, 103 S.Ct. at 1943. It is clear that Coston's case does not fall into this first category; as the Seventh Circuit held in *Coston I*, the items that Coston lost on were not separate causes of action, but only possible components of relief. *Coston I*, 831 F.2d at 1337.

In the second class of cases, the plaintiff makes claims based on a common core of facts or related legal theories. In such cases, the attorney's time will generally be spent on the case as a whole, rather than on any particular claim. Where some of the related claims prove unsuccessful, the court should not necesarily deny attorney's fees for such claims, but rather, must examine "the significance of the overall relief obtained by the plaintiff in relation to the house reasonably expended on the litigation." *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. Based on this standard, Plitt essentially argues that because Coston has received less than before, his relief is less "significant" and therefore is deserving of less in fees.

We cannot agree. At the end of *Coston I*, Coston had been awarded $37,420.10 in compensatory damages, and the Seventh Circuit had essentially held that he was entitled to the same amount in liquidated damages, for a total of $74,840.20. At the present time, he has received $37,420.10 in compensatory damages, and settled the willfulness portion for $28,500.00, for a total of $65,920.10. Admittedly, this is about $9,000 less, but the relief is still substantial and was achieved without the burden of a second trial. In our view, the reduction in the amount that Coston has received is not so great as to justify a reduction in fees.

C. *The Effect of Coston's Contingency Fee Agreement*

■ Plitt also argues that Coston's fee agreement with his attorney indicates that the fees sought are unreasonable. Coston agreed to pay his attorney forty per cent of any recovery, or fifty per cent if an appeal or new trial was necessary. Since Coston has now recovered $65,920.10, exclusive of interest, he has presumably paid at least

$32,960.05 to his attorney. (The agreement provides that any fees collected from Plitt will be offset against the share paid to Coston's attorney.) Plitt contends that the $126,026.00 in fees sought by Coston is clearly unreasonable, since it is nearly four times the amount paid under the contingency agreement.

Plitt relies on *Blanchard v. Bergeron*, — U.S. ——, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), where the Supreme Court held that although the contingency fee was not an upper limit to a section 1988 award of fees, the presence of a fee agreement "may aid in determining reasonableness." *Id.* 109 S.Ct. at 944. Yet Plitt's reading of *Blanchard* is rather selective. "The ... contingency fee factor is simply that, a factor ... [Section 1988] contemplates reasonable compensation, in light of all of the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less. Should a fee agreement provide less than a reasonable fee calculated in this manner, the defendant should nevertheless be required to pay the higher amount." *Id.* Given the "time and effort expended by the attorney" in two trips to the Seventh Circuit and one to the Supreme Court, and in light of the unsettled definition of willfulness at the time the suit was brought, we cannot say that the fee agreement by itself renders the amount of fees sought unreasonable. We reject Pitt's contrary arguments.

D. *Availability of Fees for Appeal*

■ Coston concedes that he is not entitled to fees for his unsuccessful cross-appeal and unsuccessful petition for certiorari. He asserts, however, that he is entitled to fees for defending Plitt's appeals in the Seventh Circuit and the Supreme Court. Plitt disagrees. Plitt contends, although not with complete consistency, that prevailing party status must be determined at each appeal. Thus, because the Supreme Court vacated the *Coston I* decision, Plitt was better off than it was after *Coston I*, and thus is a prevailing party before the Supreme Court. In Plitt's view, therefore, Coston is not entitled to attorney's fees for work at the Supreme Court.

We agree with Coston, however, that Plitt's position on this issue has been foreclosed by the Seventh Circuit's decision in *Ustrak v. Fairman*, 851 F.2d 983 (7th Cir. 1988). In *Ustrak*, the defendant had appended an award of attorney's fees and had convinced the Seventh Circuit to reduce the fee award by a third. The court suggested that "if an appeal were analogized to an independent civil rights suit, the [defendant], having won *something* on appeal, would be viewed as *the* prevailing party, albeit his success was only partial." *Id.* at 990 (emphasis in original). The Court was quick to add, however, that

> [t]his is not the correct approach. As the prevailing party in the underlying civil rights action, Ustrak is entitled to reimbursement of fees reasonbly incurred, whether they are fees incurred in the original civil rights trial and appeal, fees incurred in proving those fees, or fees incurred in defending the district court's fee award.

*Id.* Thus, in the Seventh Circuit's view, a litigation should be viewed as a whole, and temporary setbacks should be disregarded. The Court noted, in dicta, that its rule would not apply to a plaintiff who had won at the trial and appealed in search of a greater victory, only to lose his appeal. Such a plaintiff, in the Court's view, would not be entitled to fees for appeal, even though still the prevailing party for the entire litigation. "But when the defendant appeals and the plaintiff incurs expenses in defending against the appeal that are reasonable even though they are not crowned by complete success, ordinarily he would be entitled to reimbursement of those fees; he had no choice but to incur them or forfeit his victory in the district court." *Id.*

The Seventh Circuit did not consider the situation encountered here, where the plaintiff won at trial, and both the defendant and the plaintiff appeal. Despite the lack of guidance, we think it is reasonable to take the approach adopted by Coston: allow fees to the plaintiff for defending against the defendant's appeal, but not for prosecuting his own appeal. Thus, because Coston has ultimately won the war, we will award him the cost of defending against Plitt's appeals, even though he lost some skirmishes along the way.[3]

### E. Fees for the Original Trial and Post–Trial Motions

Plitt contends that under *Coston II*, we are free to re-evaluate the fees that Judge Roszkowski awarded for the original trial and post-trial motions. It is true that the Seventh Circuit left the question of attorney's fees open for our redetermination, but only because it was possible that Coston would lose on the willfulness issue on remand, and would therefore only be a partially prevailing party. Instead, Coston, through settlement, has prevailed on the issue of willfulness, and for reasons that we have already set out, he is entitled to a full award of fees for the trial and the post-trial motions. We will not disturb Judge Roszkowski's findings as to the fees incurred before the appeals, since he was in a better position than we are to evaluate their reasonableness.

### F. The Use of Current Billing Rates

■ Coston asks that we award attorney's fees at his attorney's current billing rate of $160 an hour. The use of current billing rates has been endorsed by the Supreme Court as "an appropriate adjustment for delay in payment." *Missouri v. Jenkins ex rel. Agyei*, —— U.S. ——, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989). To be sure, their use is not mandatory, *see id.*, and other methods may also be used. For example, one judge in this district has utilized a weighted average prime rate for each year. *Lippo v. Mobil Oil Corp.*, 692 F.Supp. 826 (N.D.Ill.1988) (Shadur, J.). Presumably, this method will produce awards more precise than the rough and ready numbers provided by the current billing rate. But precision, though desirable, is probably illusory, *see Ustrak v. Fairman*, 851 F.2d 983, 989 (7th Cir.1988) (court rounds award of attorney's fees to

---

**3.** We will return to Plitt's contention that some of the appellate fees that Coston seeks should not be awarded because they are rightly attributable to the cross-appeal and cross-petition for certiorari.

nearest hundred, "to avoid creating a delusive impression of exactness"), and comes at some cost. In a case that has already lasted more than six years, it would not constitute sound case management to spend more judicial time fine-tuning an attorney's fee award.[4] Although we will not rule out the use of a weighted average prime rate method or some other alternative method in an appropriate case, in this case, we will use current billing rates to compensate for the delay in payment.[5]

### G. Objections to Specific Entries

We finally come to Plitt's objections to specific entries. We begin by repeating that we will not reduce any of the hours—358.00 attorney hours and 60.25 paralegal/law clerk hours—already awarded by Judge Roszkowski and upheld by the Seventh Circuit.

■ 1. Plitt first suggests that Coston has not subtracted enough hours for the unsuccessful cross-appeal and cross-petition for certiorari. Coston has deleted 74.-25 attorney hours and 3.75 paralegal hours for the *Coston I* cross-appeal, but still asks for 179.00 attorney hours and 70.25 paralegal hours for defending the appeal. We agree with Plitt that the proportion of hours spent on the appeal seems a little high, and this is especially true of the paralegal hours. We recognize that many of the hours would have been necessary even if Coston had never filed an appeal, but we cannot believe that 70.25 paralegal hours, out of a total of 74, would have been needed in the absence of the cross-appeal. We will therefore reduce the number of paralegal hours for defending the *Coston I* appeal to 50. The proportion of attorney hours is not as unbalanced, but it is still a little high. Accordingly, we will reduce the number of attorney hours for defending the *Coston I* appeal to 165.00.

The fees requested for Supreme Court work are likewise out of kilter. Coston has deleted 10.75 attorney hours and 12.75 paralegal hours for the Supreme Court, but still requests 55.75 attorney hours, and 30.-00 paralegal hours. We will reduce the hours for the Supreme Court to 45 attorney hours and 27 paralegal hours.

2. Plitt also contends that the 35.75 hours Coston's attorney spent preparing for oral argument in *Coston I* were excessive. In *Ustrak v. Fairman,* 851 F.2d 983, 987 (7th Cir.1988), the court found that a total of 38 hours of oral argument preparation was excessive, and reduced that portion of the fee award to 16 hours. Plitt argues that we should do the same here. However, in *Ustrak*, the Seventh Circuit emphasized that the issues were relatively simple; here, by contrast, the issue of willfulness was anything but simple. Although Judge Manion concurred in *Coston I*, he questioned the Court's application of Supreme Court precedent. In addition, after the Supreme Court had vacated, the Seventh Circuit ultimately decided it was in error on the issue. Nonetheless, even though the issues were not simple, we think the hours requested are somewhat excessive. Accordingly, we will subtract an additional six hours from the attorney hours requested for *Coston I*, bringing it down to a total of 159.00.

■ 3. Plitt argues that much of the time spent on the remainder of *Coston II* should be disallowed because it was duplicative. It is true that in his briefs before the Seventh Circuit, Coston's attorney made many of the same arguments he had made in opposition to Plitt's petition for certiorari, but we cannot say that this was unreasonable. Moreover, Plitt has not shown us and our review of the time records does not reveal how the time spent on the "rehashed" arguments was excessive. We reject Plitt's argument on this point.

■ 4. Plitt argues that after *Coston I*, Coston's counsel prematurely filed a petition to recompute the judgment and for

---

**4.** We find it at least somewhat ironic that in *Lippo*, Judge Shadur criticized the lawyers for overlitigating, and then perhaps went into overadjudicate the question of fees.

**5.** Plitt does not challenge the $160 current hourly billing rate of Coston's attorney, Daniel Mathless.

fees on appeal, long before the disposition of the certiorari petitions. Because the Supreme Court granted Plitt a writ of certiorari, these motions were never considered, so Plitt argues that the time spent on them should be disallowed. However, as Coston points out, Plitt did not move to stay the Seventh Circuit's mandate, and it was issued on November 6, 1987. With the mandate issued, the ninety-day period for the filing of attorney's fees request under Local Rule 46 began to run again. Had Coston waited until the Supreme Court's decision on the certiorari petition, he might have lost his right to petition for fees. We reject Plitt's argument on this point as well.

5. The remainder of Plitt's objections are without merit.

6. We will not award fees for the time spent on the interest issues in this opinion, since that is a separable claim, and because Coston has failed to prevail on it.

### H. *Summary*

| | Attorney Hours | Paralegal/Clerk Hours |
| --- | --- | --- |
| a. District Court Pre–Appeal | 358.00 | 60.25 |
| b. Coston I | 159.00 | 50.00 |
| c. U.S. Supreme Court | 45.00 | 27.00 |
| d. Coston II | 46.75 | 34.50 |
| e. District Court during Appeals and on Remand through 4/30/89 | 43.60 | 5.80 |
| f. This Fee Petition | 25.00 | 6.00 |
| | 677.35 | 183.55 |

$$677.35 \times \$160 = \$108,376.00$$
$$183.55 \times \$50 = \phantom{\$10}9,177.50$$
$$\$117,553.50$$

We will therefore award attorney's fees in the amount of $117,553.50.

### III. Costs

Plitt has not objected to Coston's request for costs, and our review indicates that the costs requested are reasonable. We will therefore award costs in the amount of $1,886.76.

### IV. Interest on the Willfulness Settlement

Coston also seeks post-judgment interest under 28 U.S.C. § 1961 on the willfulness settlement, to be measured from the first jury verdict in this case. In relevant part, section 1961 provides, "Interest shall be allowed on any money judgment in a civil case received in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment. . . ." A literal or formal reading of this section suggests that Coston is not entitled to post-judgment interest, since the original judgment on willfulness was vacated by the Supreme Court and never reinstated. Even if we consider Coston's settlement on the willfulness issue to be a judgment for these purposes, post-judgment interest would be inappropriate, since Plitt paid up almost immediately after settlement.

Coston suggests, however, that the Seventh Circuit takes an equitable rather than a literal approach to section 1961. He relies largely on *Merit Insurance Co. v. Leatherby Insurance Co.*, 728 F.2d 943 (7th Cir.1984). In *Merit*, the district court originally entered a judgment confirming an arbitration award for the plaintiff Merit, but later vacated its judgment. On appeal, the Seventh Circuit directed the district court to reinstate its previous judgment in favor of Merit. In a subsequent opinion, the Court concluded that the plaintiff was entitled to post-judgment interest, even for the period where the judgment had been vacated.

[The defendant] Leatherby asks us to suspend the award of post-judgment interest for the period between the district

court's order setting aside its previous confirmation of the arbitration award and our reversal of that order. But as between Merit, whose position on the merits we have vindicated, and Leatherby, the adjudicated wrongdoer, it is more just that Merit should receive interest for the entire post-judgment period than that Leatherby should be allowed for even part of this period to enjoy, interest free, money that rightfully belonged to Merit. *Merit*, 728 F.2d at 945.[6]

Coston argues that he and Merit are similarly situated. He originally won on willfulness, had his judgment vacated, but has . now won again through settlement. But there is a substantial and, we conclude, controlling difference here. Plitt has never been adjudicated a wrongdoer, so we cannot say that the settlement money "rightfully belonged" to Coston from the time of the original judgment, or that it was unjust that Plitt had the use of the money during this time. Coston's citation of section 1988 cases such as *Larsen v. Sielaff*, 702 F.2d 116 (7th Cir.), *cert. denied*, 464 U.S. 956, 104 S.Ct. 372, 78 L.Ed.2d 330 (1983), is misguided. It is true that one can be a prevailing party under section 1988 without an adjudication in one's favor, as for example through settlement. But the Seventh Circuit's focus in *Merit* was different: it was on equity and who was an "adjudicated wrongdoer," not on whether the plaintiff had ended up better than when he started. In light of this, we will deny Coston's request for post-judgment interest on the amount of the willfulness settlement.

### V. Conclusion

For the reasons set forth above, we award Coston $117,553.50 in attorney's fees and $1,886.76 in costs. We deny his request for an award of post-judgment in-

terest on the amount he received in settlement of his willfulness claim. It is so ordered.

---

6. The Courts of Appeals are split on the issue of whether under section 1961 the date of · the original award · is used if it is later vacated but then reinstated or whether the date of the later award is used. *See generally Bonjorno v. Kaiser Aluminum & Chemical Corp.*, 865 F.2d 566, 571 & n. 7 (3d Cir.) (collecting cases), *cert. granted*, — U.S. —, 109 S.Ct. 3184, 105 L.Ed.2d 693 (1989). It is difficult to tell from the summary of the certiorari petition in U.S. Law Week, but the Supreme Court may have decided to resolve this conflict.

We also note that an earlier Seventh Circuit case had adopted a position contrary to the *Merit* decision. *Harris v. Chicago Great Western Railway Co.*, 197 F.2d 829, 836 (7th Cir.1952). We conclude, however, that Merit has overruled *Harris* on this point, albeit without mentioning *Harris* by name.