**Anthony W. PAOLITTO, Plaintiff,**

v.

**JOHN BROWN E. & C., INC., Crawford & Russell, Inc., Defendants.**

**No. B 89 CV 375 (GLG).**

United States District Court,
D. Connecticut.

Jan. 30, 1997.

---

**18**

Silver Golub & Teitell, Stamford, CT by David S. Golub, Jonathan M. Levine, for Plaintiff.

Cummings & Lockwood, Stamford, CT by Marc L. Zaken, for Defendants.

## OPINION

GOETTEL, District Judge:

Plaintiff moves to clarify or modify our November 20, 1996 Order in which we held that plaintiff's maximum recovery on all three of his claims of relief would be that for the largest cause of action since the three claims were alternative awards. While plaintiff does not dispute that he may not recover duplicative awards of the actual damages, plaintiff asserts that he is entitled to recover both awards of liquidated damages.

## BACKGROUND

Anthony W. Paolitto was employed by John Brown E. & C., Inc. and its predecessor Crawford & Russell, Inc. for twenty-two years—July 1971 through March 1993. He was initially employed as a design engineer. In 1979, when Crown & Russell, Inc. was acquired by John Brown E. & C., Inc., he was paid a substantial bonus in order to induce him to remain with the company. In November 1981, when plaintiff had been with the company for ten years, he was offered a position as structural engineer at a competing company at a salary 20% higher than he was then earning. Plaintiff advised his supervisor, the Chief of Structural Engineering, of this offer and told him that he found it quite attractive. Plaintiff asked his supervisor what his future at the company would be and requested a quick response. Plaintiff testified at trial that his supervisor (who died before this action was commenced) spoke with the company's management officials and told plaintiff that they had authorized him to present a counteroffer: they would raise his salary by approximately 10% and he would be made Assistant Chief Structural Engineer immediately. Plaintiff also testified that his supervisor told him that the company would make him the Chief Structural Engineer when he, the supervisor, retired. Plaintiff thereafter declined the other company's offer and stayed with the defendant. He received the promised salary increase of over 10% and was promoted to the position of Assistant Chief Structural Engineer.

The Chief Structural Engineer subsequently died in January of 1985, but plaintiff was not promoted to that position. Instead, someone who was serving as a Chief Structural Engineer in defendant's Texas office, and who was senior to plaintiff, was brought to Connecticut to fill the position. In October 1987, this new chief resigned. The position again did not go to plaintiff. It was first offered to a 43–year–old employee, who declined it, and then was given to a 38–year–old employee. (At that point in time, plaintiff was 57–years–old). Plaintiff then filed a complaint with the Connecticut Commission on Human Rights and Opportunities alleging age discrimination. In July 1989, this action

was commenced. In March 1993, when plaintiff was 63–years–old, his employment was terminated as part of a reduction in force.

At trial, plaintiff pursued three alternative claims of relief. Plaintiff sought recovery for age discrimination for defendant's failure to promote him to the position of Chief Structural Engineer. Plaintiff also asserted that defendant's failure to promote him breached a contractual obligation to plaintiff since defendant had promised to promote plaintiff to Chief Structural Engineer when the then current Chief Structural Engineer retired. Finally, plaintiff claimed that defendant retaliated against him for his initiation of this action, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623. In support of his retaliation claim, plaintiff asserted that his work assignments since the filing of his action had been inferior to his assignments prior to his initiation of this action. Plaintiff also asserted that defendant had retaliated against him by awarding him raises that were lower than what he would have otherwise received.

The jury returned a verdict for plaintiff on each of his claims. On a special interrogatory form, the jury specifically found:

1.  that defendant willfully discriminated against plaintiff on the basis of his age in not promoting him to the position of Chief Structural Engineer in November 1987,
2.  that defendant breached a contractually binding promise to plaintiff on November 6, 1987 when it did not promote plaintiff to the position of Chief Structural Engineer, and
3.  that defendant willfully retaliated against plaintiff for his filing of an age discrimination complaint.

The jury was also asked to calculate damages. (They were instructed that they should disregard any overlap that may exist between the different claims, and that the court would consider any duplication of awards following their return of a verdict.) The jury awarded actual damages of $100,000 on the age discrimination claim, $100,000 on the breach of contract claim, and $29,000 on the retaliation claim.

The jury's award of $100,000 was consistent with plaintiff's request that he be awarded $100,000 as the difference between the total salary payments he would have received if he had been promoted to Chief Structural Engineer and the total salary payments he actually did receive following defendant's failure to promote him. The award of $29,000 was consistent with plaintiff's theory that he suffered $29,000 in damages of lower salary payments as a result of defendant's failure to grant him his proper raises following his initiation of this action.

In addition to the jury's awards and the prejudgment interest agreed upon by both parties, we directed the clerk, pursuant to the jury's finding of willfulness, to add liquidated damages of $100,000 to plaintiff's first count of age discrimination and to add liquidated damages of $29,000 to plaintiff's third count of retaliation. We instructed the clerk, however, that the maximum recovery should be that of the largest cause of action, since the three counts were alternative awards. Plaintiff is therefore entitled to recover the agreed upon prejudgment interest, $100,000 in actual damages and $100,000 in liquidated damages.

Both parties agree that the *actual* damages awarded plaintiff were entirely duplicative. As submitted to the jury, plaintiff's failure to promote discrimination claim sought damages of lower salaries from November 1987 through March 1993, and plaintiff's retaliation claim sought damages from November 1988 through March 1993. Plaintiff concedes that he is only entitled to recover the larger of the two amounts awarded, since the larger award will make him whole for his actual lost salary over the entire period. Likewise, plaintiff also concedes that the actual damages awarded on the discrimination and breach of contract claims overlap and that only one recovery is permissible for such damages.

While plaintiff agrees that he is entitled to recover only $100,000 in actual damages, he asserts that he may recover liquidated damages on both the age discrimination claim and the retaliation claim. Plaintiff therefore requests that we modify our earlier order

and direct the clerk to permit plaintiff to recover prejudgment interest, $100,000 in actual damages and $129,000 ($100,000 + $29,000) in liquidated damages. For the reasons discussed below, we adhere to our earlier determination that plaintiff may not recover duplicative liquidated damages on both his age discrimination and retaliation claims.

## DISCUSSION

Plaintiff argues that, even though the actual damages overlap, given the punitive and deterrent purpose of the ADEA's provision for liquidated damages, he is entitled to recover separate awards of liquidated damages on both his age discrimination and retaliation claims. Liquidated damages under the ADEA are punitive, not compensatory, in nature. *See Commissioner of Internal Revenue v. Schleier,* —— U.S. ——, —— & n. 5, 115 S.Ct. 2159, 2165 & n. 5, 132 L.Ed.2d 294 (1995), *quoting Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 126, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985). Plaintiff thus argues that the awards of both liquidated damages in this case do not overlap. Rather, plaintiff asserts that the two awards of liquidated damages seek to punish and deter the legally separate, willful acts of misconduct found by the jury—discriminatory refusal to promote and retaliation.

Plaintiff argues that where the discrimination at issue is failure to promote, there will necessarily be an overlap between an employee's actual damages on his or her discrimination and retaliation claims, and, as here, the discrimination damages will almost always be greater. Unless an employee is able to recover liquidated damages on the smaller retaliation claim, plaintiff asserts an employer will be free to willfully retaliate without risk of additional monetary liability. Further, plaintiff argues that since an employee's ability to pursue a discrimination claim through the expense of pretrial and trial proceedings might hinge upon his or her ability to maintain an income, free of retaliation, while the case proceeds, the importance of maintaining an effective deterrent against retaliation is underscored. Plaintiff asserts that a rule of damages that allows an employer to retaliate willfully, without fear of additional monetary exposure, would substantially impair an employee's ability to vindicate his rights against age discrimination. While plaintiff's argument appears persuasive at first glance, as will be discussed below, his logic is flawed.

We first note that this appears to be an issue of first impression. Our independent research has not revealed, and the parties do not cite, any relevant caselaw.[1] This does

1. Both parties discuss at length the Second Circuit's opinion in *Grant v. Hazelett Strip–Casting Corp.,* 880 F.2d 1564 (2d Cir.1989). In that case, plaintiff brought both an age discrimination and retaliation claim. Under both claims, plaintiff sought liquidated damages. The jury returned a verdict for defendant on the age discrimination claim, but found for plaintiff on the retaliation claim. On the retaliation claim, however, the jury found that the retaliation was not willful.

After finding that the district court had improperly charged the jury on the age discrimination claim, the Second Circuit ordered a new trial on that claim. The Court instructed, however, that since the damages for both the discrimination and retaliation claims were the same, the first jury's determination of damages on the retaliation claim would control. A new trial was thus ordered for the purpose of determining whether defendant was liable for discrimination under ADEA, and, if so, whether its offending conduct was willful. The Court noted that, "[i]f the new trial determines both issues in [plaintiff's] favor, he would thereby recover double the $50,000 award to which he is already entitled on the retaliation claim." 880 F.2d at 1572. Ex-

pressing its reluctance to order a new trial on this issue, the Court stated "but for the liquidated damages issue, no new trial would be needed, for the discrimination claim would have become moot" since the actual damages overlapped and were identical to those damages already awarded plaintiff on the retaliation claim. *Id.*

Had the original jury found that defendant had willfully retaliated against plaintiff, the Court might have resolved our issue here. Given the facts of *Grant,* however, it clear that the Second Circuit has not resolved this issue. We find no support for defendant's assertion that "the Second Circuit noted that if the jury had awarded liquidated damages on the retaliation claim, there would be no need to remand the age discrimination claim, since the plaintiff would have thereby recovered his maximum possible damages." The Second Circuit made no such statement, and any such statement would have been dicta in any event.

We likewise reject plaintiff's reliance on *Grant.* In remanding for a new trial the issue of age discrimination, the Second Circuit simply did not address whether a plaintiff may recover separate

not, however, deter us from examining the merits of plaintiff's position.[2]

Liquidated damages under the ADEA are codified at 29 U.S.C. § 626(b). Pursuant to this subsection, ADEA liquidated damages are:

> enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of [the Fair Labor Standards Act ("FLSA")]. Amounts owing to a person as a result of a violation of [the ADEA] shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of section 216 and 217 of [the FLSA]: Provided, That liquidated damages shall be payable only in cases of willful violations of [the ADEA].

29 U.S.C. § 626(b). Section 216 of the FLSA, detailing penalties for violations of the both the FLSA and the ADEA, provides that an offending employer "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount in liquidated damages." 29 U.S.C. § 216(b). As the Seventh Circuit explained:

> The ADEA deems what it labels "amounts owing" as "unpaid minimum wages ... or unpaid overtime compensation" for purposes of section 216(b). 29 U.S.C.A. § 626(b) (West 1985). Thus, a calculation of amounts owing provides the compensatory or pecuniary loss necessary to determine liquidated damages pursuant to Section 216(b) as applied to the ADEA. Amounts owing includes "items of pecuniary loss or economic loss such as wages, fringe, and other job-related benefits." H.R.Conf.Rep. No. 950, 95th Cong., 2d Sess. 13, reprinted in 1978 U.S.Code Cong. & Admin.News 504, 528, 535.

*Kossman v. Calumet County,* 849 F.2d 1027, 1032 (7th Cir.1988).

Although less than crystal clear from the language of the statute, liquidated damages are thus calculated by doubling the compensatory or pecuniary loss. *See id.,* 849 F.2d at 1030; *Coston v. Plitt Theatres, Inc.,* 831 F.2d 1321, 1329-30 (7th Cir.1987) (discussing legislative history of the ADEA stating that liquidated damages should be calculated as an amount equal to the pecuniary loss), *cert. denied,* 485 U.S. 1007, 108 S.Ct. 1471, 99 L.Ed.2d 700 (1988); *see also Dominic v. Consolidated Edison Co.,* 822 F.2d 1249, 1258-59 (2d Cir.1987) (holding that an award of front pay should not be doubled since front pay is not included within the meaning of "amounts owing"). Accepting this statutory construction, we must conclude plaintiff is not entitled to collect an additional $29,000 in liquidated damages. Plaintiff's undisputed compensatory damages are $100,000, and he is thus entitled to liquidated damages of an amount equal to only this amount.

■ Even if we were to determine that an additional award of liquidated damages would have a desirable deterrent or punitive result, and would further effectuate the purposes of the ADEA, we simply are not permitted to grant such additional recovery. Despite the fact that the ADEA's liquidated damages are intended to be punitive in nature, we may not alter their calculation to serve this purpose. "Liquidated damages are purely a creature of statute." *See Drez v. E.R. Squibb & Sons, Inc.,* 674 F.Supp. 1432, 1444 (D.Kan.1987). As the Seventh Circuit has observed:

> Congress, if it had so wished, could certainly have left the amount of liquidated damages under the ADEA to the more freewheeling sort of calculation used generally for punitive damages, but it did not do so. . . .

---

liquidated damages for an overlapping age discrimination and retaliation claim. The Court's holding merely supports the undisputed principle that a plaintiff may assert a claim for liquidated damages on both an age discrimination and retaliation claim.

**2.** Defendants argue in their memorandum in opposition to this motion that, "[p]laintiff's motion

should be denied because he can cite no cases supporting the proposition that duplicative awards of liquidated damages on overlapping Age Discrimination in Employment Act ("ADEA") claims are permissible." While we deny plaintiff's motion, we find this a particularly unconvincing argument. Defendants have likewise failed to cite any case supporting their position.

Such a legislative decision on the part of Congress is eminently sensible. Rather than leaving the method of determining the amount of punitive damages to be fought out in the courts Congress chose to tie the amount of liquidated damages to the amount of harm done in each particular situation. Thus the deterrent power of the penalty is roughly matched to the pecuniary harm incurred.

*Coston,* 831 F.2d at 1329. Congress having determined how liquidated damages should be calculated, it is not within our discretion to alter it.

Additionally, we reject plaintiff's prediction that this conclusion will enable employers to retaliate in similar situations without risk of additional monetary liability. Here, the jury's award on the age discrimination and breach of contract counts was the difference between the total salary plaintiff did earn and the total salary he would have earned if he had been promoted. The jury's award on the retaliation claim, however, was only the difference between what plaintiff earned and what he would have earned had his raises not been diminished in retaliation for him pursuing his age discrimination claim. As submitted to the jury, the actual damages on the retaliation claim were encompassed in the actual damages sought on the first two counts. Pursuant to plaintiff's theory, absent retaliation, plaintiff would have earned $29,000 more than he actually earned. Accordingly, absent retaliation, plaintiff's actual damages on his age discrimination claim would have been $29,000 less. Plaintiff is therefore incorrect in concluding that an employer in such situations will not incur additional monetary liability in the event of retaliation.

Lastly, we note that if the jury had *first* been asked to determine whether plaintiff's wages had been diminished because of retaliation, consistent with the verdict here, the jury would have responded in the affirmative in the amount of $29,000. Likewise, the jury would have found that the plaintiff suffered an additional $71,000 in actual damages because of the defendant's failure to promote him. Consistent with the actual verdict, if the jury further found both violations were willful, we would have doubled both the $29,000 and the $71,000 awards. In whole, if the damages had been presented to the jury as dependent claims, plaintiff would have been entitled to recover a total of $100,000 in actual damages and a total of $100,000 in liquidated—exactly the amount owing to plaintiff here.

We therefore deny plaintiff's motion to modify our November 20, 1996 Order. The judgment will remain as originally entered.

### CONCLUSION

For the foregoing reasons, plaintiff's Motion to Clarify or Modify November 20, 1996 Order (Document # 190) is DENIED.

**SO ORDERED.**