**Vernon A. WASHINGTON, Plaintiff,**

v.

**Samuel PIERCE, Defendant.**

**No. 76 C 3801.**

United States District Court, N.D. Illinois, E.D.

Dec. 13, 1983.

George F. Galland, Jr., Davis, Miner, Barnhill & Galland, Chicago, Ill., for plaintiff.

Martin B. Lowery, Asst. U.S. Atty., Chicago, Ill., for defendant.

## ORDER AWARDING ATTORNEYS FEES AND COSTS

GRADY, District Judge.

Plaintiff, who prevailed on his individual claim of employment discrimination in this Title VII case, has petitioned for $36,301.18 in attorneys fees, together with costs of $1,723.22. The petition is based upon time spent on plaintiff's individual claim only, with nothing claimed for time spent on the unsuccessful class action. Bearing in mind that there was much overlapping factual material between the individual and the class claims, it was not possible to make a precise breakdown of the time spent on one as against the other whenever a time entry was made. Plaintiff has suggested that 50 per cent would be a reasonable minimum estimate of the percentage of the unallocated time spent on the individual claim, and I agree. The 283.5 hours claimed to have been spent on the individual claim is reasonable and appears to me to be as fair an estimate as could be made under the circumstances.

In determining what the compensation should be for the time spent, I consider the following: the work done was of a high quality; the case was of more than average difficulty and complexity from a factual standpoint; the case resulted in a substantial benefit to the plaintiff; and plaintiff's attorneys took the case on an entirely contingent basis. In light of these factors, I believe the requested hourly rates of $70.00 for associate counsel and $105.00 for

principal counsel are reasonable. I also accept plaintiff's suggestion that these current hourly rates be applied for the entire time the case was pending, to allow for inflation.

While agreeing that in this case the rate of $105.00 per hour is proper, I do not mean to imply that I would accede to that rate in all cases. There are two things about this case that make that rate appropriate: first, it was a difficult case; second, it was tried. Many cases are simple, and most of them are not tried. It does not follow that the rate appropriate for one case is necessarily appropriate for another. Still less does it follow that the same rate is appropriate for all work done by the same lawyer in the same case. Taking depositions is about the easiest legal work there is. The only thing I can think of offhand that might be even easier is propounding and answering interrogatories. Yet depositions, interrogatories and document examination constitute the bulk of the work for which many "litigators" are charging rates of $100.00 an hour and more. What has happened is that an hourly rate is set with trial work in mind, and then we promptly lose sight of the fact that most of the work for which that rate is being charged is "pretrial" activity which requires none of the ability or experience demanded of an able trial practitioner. The deposition takers and document readers have been getting a free ride, at least as far as court-ordered fee awards are concerned. In the real world, where clients rather than judges are being asked to approve the fees, many lawyers charge less

for time spent out of court than they do for trial time. In the November 1983 issue of the *Illinois Bar Journal* (Vol. 72, No. 3), there appears a 1982 economic survey of Illinois lawyers, dealing with their fees, billing practices and the like. Table 4.24 of that survey, 72 Ill.B.J. 116, 149,[1] shows that most Illinois lawyers surveyed charge a different rate for trial than for other work.

Defendant has not suggested that in this case plaintiff's counsel should be paid less for pretrial work than for trial, and I have no problem myself allowing a uniform rate in this case. The pretrial work was trial-oriented, the case was tried and there is no suggestion of any unnecessary pretrial activity. Moreover, if I were to differentiate in this case, the result would probably be about the same, because I would be inclined to allow a rate higher than $105.00 for the time spent on trial.

I should add that I am approving the $105.00 rate in this case because my personal observation of the performance of counsel satisfies me that he earned that rate in this case. I reject out-of-hand counsels' argument that I should go along with their "customary" rates because these rates have been set by a rational market process. Would that this were true. Unfortunately, the setting of legal fees is largely a unilateral process, with the lawyer telling the client what the fee is going to be and the client simply paying it. (A notable exception is insurance defense work, where the insurance company clients are knowledgeable and the hourly rates are therefore much lower than those customar-

1. TABLE 4.24 — Percent charging different hourly rates for trial than for other time, by position and type of practice and by mix of personal and corporate spheres in practice, for only those charging by the hour and doing trial work, weighted sample.

**A. Position and type of practice.**

| | Solo alone | Solo sharing | Firm. 2–4 | | Firm. 5–9 | | Firm. 10 plus | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | Assoc. | Principal | Assoc. | Partner | Assoc. | Partner |
| Percent charging different amount for trial work | 72% | 73% | 77% | 56% | 38% | 65% | 15% | 37% |

**B. Mix of personal and corporate spheres**

| | Concentration in neither | Concentration in personal | Concentration in both | Concentration in corporate only |
| --- | --- | --- | --- | --- |
| Percent charging different amount for trial work | 53% | 68% | 60% | 31% |

ily paid in corporate litigation). Many lawyers speak with contempt of clients who "fee shop," and the idea that fees are the result of a free bargaining process in a competitive market is contrary to experience.[2] We are starting to see a few changes in this picture in the case of large, sophisticated corporate clients. It is high time. But even in these few instances, the emphasis is not on hourly rates—it is on cutting the amount of time spent.

 Turning now to the question of a multiplier, I believe the factors I mentioned earlier, especially the fact that the fee was contingent, make a multiplier appropriate. Moreover, I believe that the 25 per cent requested is fair and reasonable.

I reject defendant's suggestion that there should be some kind of offset for the fact that defendant prevailed on the class action part of the case. I agree with plaintiff that the *Christianburg* [3] test precludes this approach.

Plaintiff's request for costs includes $66.25 in taxi fares, apparently for transportation to and from court. Although defendant has not specifically objected to this portion of the claim, I have decided not to allow it. The cost of transportation to court seems to me an overhead item covered by the lawyer's hourly rate, not a separate cost to be passed on to the client. I assume that counsel's time for court appearances has been charged on the customary portal-to-portal basis, a practice which usually results in some overpayment to begin with, since it is doubtful that counsel is producing at a $105.00 per hour level the entire time he is in transit. Thirty years ago the idea of charging a client for taxi rides to court would have seemed bizarre. The idea of taking a taxi at all is one that would have occurred to few loop attorneys.[4] Times have changed, to be sure, but not consistently for the better. If the client is willing to pay his lawyer's taxi fares, that is between them. But I do not believe taxi fares are properly assessable against the losing party in addition to the hourly rate assessed for the time in transit.

Plaintiff's petition for fees and costs is allowed, with the one exception noted, and defendant is ordered to pay to plaintiff's attorneys the sum of $36,301.18 in fees and the additional sum of $1,656.97 in costs.

incredible escalation of "customary" rates in recent years.

---

**2.** What has been happening is that lawyers tell judges their customary charges are at particular rates, the judges approve those rates on that representation, and then the lawyers turn around and charge those rates to new clients on the strength of the judicial determination that the rates are customary. By the role they have played in these bootstrapping exercises, judges have been largely responsible for the almost

**3.** *Christianburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 422, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).

**4.** For one thing, it takes too long. They would have been afraid of being late for court.