753 F.2d 629
 Dinorah BERBERENA, Rebecca Weaver, on behalf of themselves,
their minor children and all others similarly
situated, and Karen Simpson, Plaintiffs-Appellees,
v.
Gregory COLER, successor in office to Jeffrey C. Miller, as
Director of the Illinois Department of Public Aid,
and the Illinois Department of Public
Aid, Defendants-Appellants.
 No. 84-1458.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 7, 1984.
Decided Jan. 31, 1985.
 
 Aviva Futorian, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs-appellees.
 Katherine M. Marshall, Asst. Atty. Gen., Chicago, Ill., for defendants-appellants.
 Before FLAUM, Circuit Judge, and PELL, Senior Circuit Judge, and WISDOM, Senior Circuit Judge.*
 WISDOM, Senior Circuit Judge.
 
 
 1
 This appeal presents the question whether the district court abused its discretion in awarding attorneys fees to civil rights plaintiffs by refusing to impose a compensation rate differential for in-court as against out-of-court work and by refusing reductions in the number of compensable hours for duplication and vagueness of documentation. The district court rejected a magistrate's recommendation of such reductions and rate differentials, and awarded the plaintiffs their full requested fee of $46,664.45 for about 600 hours of work. We find no clear abuse of discretion and affirm the award.
 
 I.
 
 2
 The plaintiffs filed a class action in 1981 under 28 U.S.C. Sec. 2201, 42 U.S.C. Sec. 1983, and the Social Security Act, 42 U.S.C. Sec. 601 et seq., challenging the method by which the Illinois Department of Public Aid (IDPA) calculated the eligibility of low income working parents for Aid to Families with Dependent Children (AFDC). In particular, the plaintiffs alleged that IDPA's refusal to disregard the plaintiffs' work-related child care expenses in calculating eligibility for benefits violated the Social Security Act and the due process clause of the Fourteenth Amendment. The plaintiffs were represented by three attorneys employed by the Legal Assistance Foundation of Chicago and a private attorney who represented a named plaintiff who was also an employee of the Legal Assistance Foundation of Chicago.[1]
 
 
 3
 In 1982 a consent decree was entered in which the defendants agreed to provide the plaintiff class all of the relief requested. In 1983 the plaintiffs filed for attorneys fees under 42 U.S.C. Sec. 1988 for their work on the consent decree. Section 1988 provides that, in any action to enforce a provision of 42 U.S.C. Sec. 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs". 42 U.S.C. Sec. 1988 (1982). The plaintiffs requested $46,664.45 in attorneys fees for about 600 hours of work by four attorneys.
 
 
 4
 The district court referred the plaintiffs' motion for attorneys fees to a magistrate. The magistrate recommended that the recoverable fees be reduced to $28,504.15 for two reasons. First, she recommended that the court impose a rate differential for in-court and out-of-court work, lowering the out-of-court rate for three of the attorneys by $20 from the original flat rate requested.[2] She recommended that the out-of-court rate for a fourth attorney, whose out-of-court work consisted solely of attending conferences with her co-counsel and reviewing drafts of their briefs and memos, be reduced by $40 an hour.
 
 
 5
 Second, the magistrate recommended that the compensable hours be reduced by 122 hours because of duplication of effort and vagueness in documentation. The magistrate found duplication because only two of the plaintiffs' four attorneys bore the main responsibility for the litigation. The magistrate found that, of the remaining two attorneys, one was retained so that at least two attorneys were present at all crucial stages of the case to ensure that no plaintiffs' attorney would have to litigate alone if the other could not be present. The other was necessary to avoid a potential conflict of interest. The magistrate ruled that these two attorneys should not be awarded their total requested fees because their presence was not essential in all phases of the case. She ruled that their time spent on substantive legal work, such as attending court or drafting memoranda and briefs, was compensable, but their time spent in attending strategy conferences and similar meetings was not compensable.
 
 
 6
 The magistrate recommended further reductions in the compensable time because of vagueness in documentation. She found that entries in the plaintiffs' time sheets such as "notes of meeting" and "Discussion with Diane, Aviva" were too vague and general to be compensable, while entries such as "edit complaint" and "redraft consent decree" were acceptable. The magistrate found that a total of 95.45 hours should be disallowed for vagueness.
 
 
 7
 The district court declined to adopt the magistrate's recommendations and awarded the full fee requested. With respect to the proposed rate differential, the court noted that it "is not uncommon for the bulk of work in welfare litigation to occur out of court" and that a differential compensation rate "might discourage settlement or encourage attorneys to seek unnecessary court time". Berberena v. Miller, No. 81 C 5776, at 2-3 (N.D.Ill. Feb. 6, 1984) (order granting attorneys fees for work on the consent decree). The court concluded that "in light of the significant results obtained by this litigation and the fact that most of the major work in the case occurred out of court for this particular case situation, we must reject the otherwise useful fee distinction between in-court and out-of-court work". Id. at 3.
 
 
 8
 The court also declined to reduce the compensable hours for duplication of effort. The court found that the plaintiffs "were not guilty of 'legal overkill' ". Id. The court noted that one of the four attorneys was necessary to represent a plaintiff employed by the Legal Assistance Foundation to avoid a potential conflict of interest. The court also refused to disallow time spent in meetings in which three or four of the plaintiffs' counsel were present because "this was a difficult case, and involvement in such meetings may indeed have been crucial to subsequent participation in the case". Id. The court also found that an examination of the time sheets of the two attorneys who were not the principal attorneys in the case revealed "no duplication of effort or improper utilization of time". Id. Finally, the court concluded that a "[r]eview of time sheets for all attorneys also convinces us that reductions due to vagueness would not be appropriate here. The documentation of time spent upon this case is adequate to sustain plaintiffs' fee request." Id. Accordingly, the court granted the full fee requested of $46,664.45, and the defendants appealed.II.
 
 
 9
 A. The Standard of Review.
 
 
 10
 The Supreme Court has concluded that "the 'product of reasonable hours times a reasonable rate' normally provides a 'reasonable' attorney's fee within the meaning of [Sec. 1988]". Blum v. Stenson, --- U.S. ----, ----, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891, 901 (1984) (quoting Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The district court has considerable discretion to determine what constitutes a reasonable rate and a reasonable number of hours under the circumstances at hand. Its determination may be set aside on appeal only for a clear abuse of discretion. E.g., Freeman v. Franzen, 695 F.2d 485, 494 (7th Cir.1982), cert. denied sub nom. Branche v. Freeman, --- U.S. ----, 103 S.Ct. 3553, 77 L.Ed.2d 1400 (1983). This discretion under Sec. 1988 "is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." Hensley, 461 U.S. at 437, 103 S.Ct. at 1941, 76 L.Ed.2d at 53.
 
 
 11
 The defendants urge on appeal that the district court abused its discretion in refusing to adopt the recommendations of the magistrate. They argue that the district court's opinion was perfunctory and erroneously refused to reduce the compensable hours for duplication and vagueness of documentation and to impose a rate differential for in-court and out-of-court time. We shall consider each contention in turn.
 
 
 12
 B. The District Court Was Not Required to Use Rate Differentials.
 
 
 13
 The defendants argue that application of across-the-board hourly rates in this case without regard to the nature of the services performed results in over-compensation of services not meriting maximum hourly rates. In particular, the defendants point to hours on the plaintiffs' time sheets for work done out-of-court that they insist should have been compensated at lower rates: 128 hours in conferences with co-counsel; 63 hours conferring with clients, opposing counsel, and others; 40 hours of telephone conversations; 25 hours reviewing documents and conferring with a state representative about future legislation and preparing press releases.
 
 
 14
 Courts in this circuit have applied differential rates in awarding attorneys fees. For example, in Entertainment Concepts, III, Inc. v. Maciejewski, 514 F.Supp. 1378 (N.D.Ill.1981), the court found that it would be unfair to allow the plaintiff's attorneys to be compensated at the flat rate of $100 an hour for every hour spent on the case, because many hours spent outside the courtroom either should have been delegated to a non-attorney or were spent in telephone conversations by the plaintiff with his two attorneys, many of which the court found unnecessary. Accordingly, the court held that $50 an hour was a reasonable hourly rate for work performed outside the courtroom and $100 was a reasonable hourly rate for courtroom work.[3] This Court has stated, however, that imposition of rate differentials is not required:
 
 
 15
 In Miller v. Carson, 563 F.2d 741, 756 (5th Cir.1977), the court ruled that the trial judge's award setting separate fees for in-court and out-of-court time was not an abuse of discretion. But this does not require a trial court to compute a reasonable fee by that method. Reasonable fees may also be established by charging a modest flat rate for all hours which rate, of course, would be less than the maximum in-court hourly charge.
 
 
 16
 Bonner v. Coughlin, 657 F.2d 931, 937 (7th Cir.1981).
 
 
 17
 The defendants argue that under the Bonner standard, the district court abused its discretion by applying the maximum in-court hourly rate across the board, rather than a lower, "modest flat rate". We cannot agree. First, here the non-courtroom hours, which settled the case without a full trial on the merits, were spent mostly in consultation, negotiation, and on the telephone and were of key importance to obtaining the consent decree. Second, the rates applied here[4] are comparable to, and in most instances less than, those awarded in other cases in this circuit applying flat rates,[5] and we cannot say that those rates are clearly unreasonable in the light of the significant results obtained. Under recently revised federal eligibility standards, very few of the people in the plaintiff class would be eligible for AFDC benefits if IDPA had continued use of its challenged eligibility criteria. The plaintiffs estimate that the benefit to the class is between $3.6 and $4.8 million annually. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40, 52 (1983). Third, the National Law Journal recently reported that the average billing rate for Chicago partners is $127 an hour.[6] The highest rate requested by any of the plaintiffs' attorneys in this case was $100 an hour for an attorney of eleven years of experience. We conclude that the rates awarded by the district court were reasonable.
 
 
 18
 C. The District Court Did Not Abuse Its Discretion By Refusing to Reduce the Compensable Hours.
 
 
 19
 The defendants argue that the district court abused its discretion in rejecting the magistrate's recommendation that the number of compensable hours be reduced because of duplication and vagueness of documentation. The magistrate found that because only two of the plaintiffs' four attorneys carried most of the responsibility for the litigation, many of the hours claimed by the other two attorneys should be disallowed as not essential. The magistrate allowed the other two attorneys compensation for substantive legal work such as attending court or drafting memoranda and briefs, but not for attending strategy conferences and similar meetings with co-counsel.
 
 
 20
 Although we recognize that the magistrate gave careful consideration to the propriety of the requested fees, we cannot say that the district court's refusal to adopt the magistrate's recommendation was a clear abuse of discretion. The court realized that this was a difficult case with significant social effects and that the participation of the two attorneys in question in the strategy conferences and negotiations "may indeed have been crucial to subsequent participation in the case". The court stated in its opinion that it had reviewed the time sheets of the two attorneys and had found "no duplication of effort or improper utilization of time". We find no abuse of discretion in that ruling, particularly in view of the fact that those attorneys claimed, respectively, a total of only 80 and 25.5 hours out of the more than 600 hours compensated in the case. The district court was familiar with the case and was in the best position to judge whether the use of four attorneys on the case was unnecessary or excessive.
 
 
 21
 The defendants also insist that many of the hours logged in the time sheets of the plaintiffs' attorneys were impermissibly vague. They point to the examples identified as vague by the magistrate, such as "notes of meeting" and "Discussion with Diane, Aviva", and argue that entries such as these fail to identify the substance of the work in terms sufficiently meaningful to be compensable. They insist that the district court's refusal to adopt the magistrate's specific recommendations for reductions because of vagueness was an abuse of discretion.
 
 
 22
 Once again, we do not agree. The district court specifically found that reductions because of vagueness would not be appropriate and that the documentation of time spent upon the case was adequate to sustain the plaintiffs' fee request. Although the court did not elaborate its reasons beyond stating that its conclusions were based on a "[r]eview of time sheets", our own review of the time sheets convinces us that the district court did not clearly abuse its discretion. The entries that the defendants single out, although vague when read in isolation, are not impermissibly vague when viewed in the context of the surrounding documentation. For example, the entry listed as "notes of meeting" follows an entry for the same date identifying a three-hour meeting to discuss settlement with opposing counsel. The challenged entry obviously refers to the memorializing of the three-hour meeting. Taken in context, it is sufficient to identify the substance of the work done, and thus comports with the Supreme Court's observation that an attorney "is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." Hensley v. Eckerhart, 461 U.S. 424, 436-37 n. 12, 103 S.Ct. 1933, 1941 n. 12, 76 L.Ed.2d 40, 53 n. 12 (1983). We find the time sheets adequate to support the district court's award.
 
 III.
 
 23
 Notwithstanding the care and consideration the magistrate devoted to her task, we cannot say that the district court clearly abused its discretion by not adopting her recommendations. We find both the hourly rates and the total fee awarded to be reasonable in view of the significant results obtained and comparable to awards in other recent cases. The district court reviewed the time sheets and found the hours to be neither duplicative nor insufficiently documented. The award is AFFIRMED.
 
 
 24
 PELL, Senior Circuit Judge, dissenting.
 
 
 25
 Magistrate Olga Jurco gave what I regard to be a carefully reasoned analysis of the request for attorneys fees of $46,664.45 in a case which in reality never advanced much farther on the litigation road than working out the terms of a settlement of a class action and on the basis of that analysis reduced the fees to $20,504.15. Regretfully, the district court, in my opinion, failed to look as carefully or as realistically at what I regard to be a substantially unwarranted request for fees and granted the fees to the exact penny sought. Accordingly, I respectfully dissent.
 
 
 26
 The problems presented by the legislative upsetting of the American rule on attorney's fees in suits against the government are the subject of concern and continuing study. See, e.g., At Issue, Time for a Cap on "Reasonable" Court-Awarded Attorney's Fees?, 70 ABA Journal 16, Oct. 1984. One argument centers on whether suits of the type here involved would not otherwise be brought, the desire to do so being chilled by the lack of the attorney's fees. Yet organizations such as the Legal Assistance Foundation of Chicago traditionally have been in the forefront of instituting such litigation when fees were not recoverable. With the legislative recognition that payment of fees is in order, the pro bono aspects seem to have succumbed to crass commercialism.
 
 
 27
 At the very least, because of the concern expressed by legitimate authorities that the award of fees is burgeoning beyond a reasonable status, a more careful and realistic analysis should be given to the requests than that which occurred in the district court. I can scarcely fault the district court here in that it was following what seems to be a somewhat general judicial view that the fees should not be granted with a miserly attitude; nevertheless, it does appear to me that the court was overly impressed with the large amount of recovery. That did not make the issues more complex or the duplicative efforts more justifiable; the large amount was simply a result of a very large class. The district court, it appears to me, in view of the explicit analysis of the magistrate, should have by an evidentiary hearing found out whether the time and amounts claimed were indeed justified.
 
 
 28
 I think the weakest link in the magistrate's finding was that of vagueness of documentation. Even here, though, no effort was made to ascertain whether the ambiguous entries pertained to legal work of a necessary nature to advance the litigation further. Inquiry was indicated.
 
 
 29
 The two main points of disagreement I have with the result reached by the majority was the conclusion that there was not obvious overkill by a greater number of lawyers duplicating work than was reasonably needed (though the district court without explanation said it was not overkill) and with the fact that non-court work was billed out at the same rate as in-court work. The Criminal Justice Act has always differentiated between them and it is difficult to believe that Congress intended a greater largesse when the right hand was invading the fisc than when the left hand was. It is time, notwithstanding judicial utterances to the contrary, that this differentiation should be squarely recognized. The working out of the details of the consent decree, apparently a result that was recognized almost from the beginning as where the litigation could end, in my opinion, simply did not call for the duplicative effort.
 
 
 
 *
 The Honorable John Minor Wisdom, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation
 
 
 [1]
 The private attorney was necessary to avoid a potential conflict of interest
 
 
 [2]
 Aviva Futorian, an attorney with eleven years of experience, requested compensation at the rate of $100 an hour. Diane Redleaf, the lead attorney in the case and an attorney with five years of experience, requested $70 an hour. Susan Schreiber, an attorney licensed since 1980, requested $60 an hour. Rebecca Janowitz, an attorney licensed since 1976, requested $80 an hour. The plaintiffs conceded to the magistrate that the compensation rate for time spent on errands, filings, and obtaining copies should be reduced to $30 an hour
 
 
 [3]
 See also Sanchez v. Schwartz, 688 F.2d 503 (7th Cir.1982), affirming a differential of $85 an hour for office time and $125 an hour for in-court time
 
 
 [4]
 See supra note 2
 
 
 [5]
 See e.g., Tikalsky v. City of Chicago, 585 F.Supp. 813, 816 n. 5 (N.D.Ill.1984) ($75-$150 an hour); Rybicki v. State Board of Elections, 584 F.Supp. 849, 861 (N.D.Ill.1984) ($100 an hour); Washington v. Pierce, 576 F.Supp. 473, 475 (N.D.Ill.1983) ($105 an hour); Palmer v. City of Chicago, 576 F.Supp. 252, 256 (N.D.Ill.1983) ($135 an hour); Harceg v. Brown, 536 F.Supp. 125, 129-30 (N.D.Ill.1982) ($135 an hour)
 
 
 [6]
 National Law Journal, Feb. 27, 1984, at 30-31; see Tomczak v. City of Chicago, 586 F.Supp. 959, 959 (N.D.Ill.1984)