Richard **BARNETT**, et al., Plaintiffs,

v.

**CITY OF CHICAGO**, et al., Defendants.

and

**Carole Bialczak, et al., Defendant–Intervenors.**

Nos. 92 C 1683, 92 C 2104 and 92 C 2666.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 29, 2000.

Judson H. Miner, Miner Barnhill & Galland, Chicago, IL, Jacqueline A. Berrien, New York City, Nathaniel R. Howse, Jr., Nathaniel R. Howse, Sr., Chicago, IL, for Richard Barnett, Eddie Reed, plaintiffs.

Bridgett Arimond, Chicago, IL, for Allan Streeter, Helen Shiller, John O. Steele, Dorothy Tillman, Lawrence S. Bloom, Robert Shaw, Jesse J. Evans, Bobby L. Ruch, Percy Giles, William M. Beavers, Toni Preckwinkle, Rickey Hendon, Joe Moore, Arenda Troutman, Shirley A. Coleman, Virgil E. Jones, Jesse Miller, Sam Burrell, plaintiffs.

Margaret E. Rice, City of Chicago, Dept. of Law, Chicago, IL, for City of Chicago, defendant.

James M. Scanlon, James M. Scanlon & Assoc., Chicago, IL, for Board of Election Com'rs. of City of Chicago, defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Prevailing plaintiffs in this voting rights case have filed a petition for attorneys' fees pursuant to 42 U.S.C. §§ 1988 and 1973(e). Pursuant to local rule, the parties exchanged positions and attempted to work out their differences on this issue. Before me are the petition, defendants' limited objections, and plaintiffs' reply. This opinion discusses the various objections.[1]

Defendants argue that the principal attorney in the case, Judson Miner, is seeking an hourly rate that, for many of the years this case has been in litigation, is too high.[2] Mr. Miner seeks an hourly rate of $350 for work in the years 1998 and 1999, $325 an hour for work in 1996 and 1997, and $310 for work in 1994 and 1995. Defendants say he billed clients at a rate of $285 from 1994 to 1998 and that his rate should be capped at this amount. An attorney's actual billing rate is "presumptively appropriate." *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 555 (7th Cir.1999) (quoting from earlier case). The goal in setting a fee "is to determine what the attorney could have made 'if he were not representing this plaintiff in this case'." *People Who Care v. Rockford Board of Education,* 90 F.3d 1307, 1312 (7th Cir.1996) (citation and emphasis omitted).

Mr. Miner represents that his firm primarily handles cases such as voting rights and employment cases in which a court determines the fee. In that sense, while the fee he charges clients paying an hourly fee is relevant it is not conclusive because if he had not spent the time he did on this case it might have been spent on another fee shifting case. In the absence of relevant actual billing rates for these type of cases, I may consider the rates "similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Spegon,* 175 F.3d at 555. On the first point, plaintiffs have not presented much evidence. Although they attach numerous affidavits from respected attorneys, only one states the billing rate charged by that attorney. The rest simply state the conclusion that the rates sought by Mr. Miner (and other attorneys in his firm) are reasonable. This is not helpful. *Id.* at 556 (noting that affidavits should state the rates affiants charge paying clients for similar work). The one affidavit that states a billing rate indicates that the lawyer, Fay Clayton, a 1979 law graduate, charges her paying clients $325 an hour. It is not clear, however, that this is for similar work and Ms. Clayton, like Mr. Miner, according to her declaration, also spends most of her practice on fee shifting cases. The only other evidence in the record based on hourly billing rates that would support Mr. Miner's claimed $350 an hour rate is the affidavit of Michael Shakman, a lawyer of similar experience and stature in the community, submitted in support of his own fee petition, in which he states that he charges paying clients $350 an hour, although he does indicate that he reduces that amount for clients with large billings. Plaintiffs say that the comparable defense lawyer, Jerold Solovy, charges as much as

---

1. I have not discussed defendants' objection to the award of any fees on the ground that plaintiffs were not prevailing parties since that objection was previously addressed in the opinion awarding costs.

2. Two of the firms, Miner, Barnhill & Galland and Gessler, Hughes, & Socol, seek compensation at historical rates. The remainder seek compensation at current rates. Both are acceptable, although the Seventh Circuit has indicated that calculations based on historical rates is the preferred method. *Matter of Continental Illinois Securities Litigation,* 962 F.2d 566, 571 (7th Cir.1992).

$425 an hour, but if so, with the exception of one bill he did not do so in this case, charging in 1998 $315 an hour. Plaintiffs also refer to numerous fee awards in other cases. While no court has awarded Mr. Miner $350 an hour, Judge Castillo found $325 an hour to be acceptable in 1998. Other awards involving other attorneys in Mr. Miner's firm are comparable when dates of award and level of experience of the attorneys involved are considered.

Considering all of the evidence (Mr. Miner's historical fees, the evidence that exists of comparable rates charged by other attorneys, and other fee awards, as well as Mr. Miner's acknowledged expertise in the area of voting rights), I conclude that an award based on $325 an hour for the years 1996 through 1999 and $310 for the years 1994 and 1995 is reasonable.

Defendants make similar objections to the hourly rates sought by other attorneys in the Miner firm, as well as by Bridget Arimond, an outside attorney brought in by Mr. Miner to work with him on the hearing and briefs required by the Seventh Circuit's remand of this case and its subsequent assignment to this court. In addition to the arguments made in support of Mr. Miner's hourly rate, plaintiffs point to the fact that defendants paid outside attorneys with similar experience at rates equal to or in excess of the rates claimed by these attorneys. I agree that defendants have failed to rebut plaintiffs' evidence that the rates sought by these attorneys are reasonable. *See People Who Care v. Rockford Bd. Of Education*, 90 F.3d 1307, 1313 (7th Cir.1996).

■ Defendants also argue that fees should not be awarded for 285 hours spent by Mr. Miner prior to the time this case was filed on the ground that the time was spent on "political" work as opposed to litigation. However, defendants have not challenged plaintiffs' representation that this time was devoted to attempts to settle this case without litigation and to developing plaintiffs' legal theory. In addition, Mr. Miner did not seek fees for an addi-

tional 111 hours spent during the prelitigation period in which plaintiffs sought an alternative ward map. I conclude that the hours sought are reasonable.

■ Defendants' last objection to the Miner firm's fees are to the request for a multiplier. Essentially, the parties disagree about whether a court can award a multiplier following *Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). Theoretically, the Seventh Circuit has said a multiplier may still be appropriate in some cases, *see Price v. Marshall Erdman & Associates,* Inc., 966 F.2d 320, 327–28 (7th Cir.1992), but I conclude that this case is not an exception to the general rule announced in *Dague.* The fact that plaintiffs were seeking injunctive relief rather than damages does not itself entitle plaintiffs to an enhancement. *Dague*, 505 U.S. at 564–65, 112 S.Ct. 2638. I appreciate the risk that plaintiffs' counsel took in this case, advancing enormous costs and spending thousands of hours for which they might never have been compensated but as I read *Dague,* that is part of the risk of this type of litigation.

Defendants also object to the request by Michael Shakman for $6,755 for 19 hours spent responding to a subpoena served on the NAACP Legal Defense and Education Fund, which was part of plaintiffs' legal team. Defendants do not argue that the amount sought is unreasonable in terms of the work required but say the subpoena was not served on plaintiffs' counsel as plaintiffs' counsel. The thinking behind defendants' subpoena is not relevant. The Miner firm brought in Mr. Shakman to handle the issues raised by the subpoena because it did not have time to respond itself. This was legal work on behalf of the plaintiffs. Mr. Shakman is entitled to compensation.

■ Defendants raise substantial objections to fee requests from three additional attorneys, Eugene Pincham, P. Scott Neville, and Nathaniel Howse, Jr. Mr. Pinc-

ham seeks $654,625 in fees, Mr. Neville seeks $358,880, and Judge Howse[3] seeks $131,080 in fees. Defendants raise several objections to these fee requests. They first argue that Mr. Pincham should not be compensated at the requested rate of $500 an hour. The rate is extraordinarily high. Mr. Pincham has not pointed to any attorneys in this case or otherwise who regularly bill at that rate. He notes that he was awarded a fee in another case at this rate. I have read the magistrate judge's report and recommendation on which that award was based, however, and it is based solely on *National Law Journal* surveys of attorney fees and her conclusion that Mr. Pincham was entitled to an award at the high end of the fee range. Since in this case I have more specific evidence of actual fees charged by other attorneys, I need not rely on a survey. Furthermore, the hourly rate was not contested in that case and the award covered only a few hours. Mr. Pincham has not pointed to any other fee awards that he has received that might justify the amount, and indeed, has not referred the court to any other cases in which he has been awarded any fee. In addition he states that he does not bill clients at any hourly fee. He does point out that he has had a long career both as an attorney and a judge, but neither seem to justify an award that exceeds the hourly fee charged by or awarded to the other attorneys involved in this case. I conclude that $500 an hour is excessive. I will reduce Mr. Pincham's fee to $325 an hour, which is at the highest level of any attorney actively involved in this case.

Defendants similarly object to the $320 per hour fee sought by Mr. Neville. In view of his experience, however, and in comparison with the fees charged by defense counsel, his hourly rate is reasonable.

The most serious challenge to the requested fees raised by defendants concerns the number of hours for which Messrs. Pincham, Neville and Howse seek compensation. It is undisputed that none of these lawyers were actively involved in this case after late 1992 when Mr. Miner became lead counsel. I have reviewed the time records submitted by these attorneys after that time. While there are a few conferences and court appearances in 1993, and some entries in 1993 and 1994 that indicate "research," the vast majority of entries in the time sheets submitted to me indicate that the time was spent reviewing the work of other attorneys. After the Seventh Circuit reversed Judge Duff's order striking these attorneys from representing plaintiffs, virtually all of their time in this case is marked "review."[4] The Seventh Circuit concluded that even if these attorneys were not actively involved in trying the lawsuit, they might become involved in the remedy stage of the proceeding. In fact, however, after the Seventh Circuit later reversed Judge Duff's findings in favor of defendants and the case was transferred to me, Mr. Miner was forced to bring in another lawyer to help him in the proceedings before me because Messrs. Pincham and Neville were unavailable. As defendants note, ironically, Mr. Pincham's earlier unavailability was said to be the result of his work in the case in which he received the fee award noted above. But his entire work in that case amounted to just over 50 hours. In contrast, after the court of appeals granted the mandamus petition against Judge Duff, Mr. Pincham claims 183 hours were spent reviewing work done by others. He also claims to have spent 182 hours that were never noted in time sheets discussing this case in telephone calls with Mr. Neville. Mr. Neville claims

---

3. Judge Howse seeks compensation for work before he was elected a judge in the Circuit Court of Cook County, Illinois.

4. In addition to recording much time as "review," Mr. Neville recorded many additional hours with the notation, "read letter" or "read 2 letters" etc. There is never any explanation of what the letter concerned or who it was from.

to have spent 394 hours reviewing the work of others. He also claims to have spent an additional 182 hours in unrecorded time in telephone calls with Mr. Pincham, for which he seeks compensation. Judge Howse did not keep any records of his time. He seeks fees in the amount of $135,000 for a claimed 450 hours according to his reconstruction.

I agree with defendants that a lot of this time cannot be justified. First, according to the unrefuted sworn statement of Mr. Miner, after January 8, 1993, when the complaints in this case were initially dismissed, he authored the joint amended complaint.[5] He thereafter became primarily responsible for the preparation of all pleadings in the *Barnett* and *Smith* cases. Second, since these attorneys did not participate in the limited retrial of the case, almost all of their "review" was unnecessary. Third, given both of the above facts, certainly three attorneys did not need to do this work. Plaintiffs argue that the hours they claim can be justified on the basis that they might have been called upon to do work later. However, the fact is plaintiffs were required to bring in other attorneys to do the work after remand because none of these attorneys was available to work on the case. I also find the amount of time spent in "review" of work done by others by attorneys who had no other involvement in the case to be greatly in excess of what appears to be justified. Accordingly, I will award compensation for 40 hours each for these attorneys for time spent in reviewing the work of others after January 8, 1993.

◼ I further find that the extra estimated hours claimed by these attorneys

for telephone conferences that were never recorded in contemporaneous time records cannot justify a further fee award in this case. There is simply insufficient information provided as to who was involved in the calls, why they were not recorded in contemporaneous time records, how the estimate was arrived at or actual telephone records.

◼ I also agree with defendants that Judge Howse' reconstructed time records do not provide a sufficient basis upon which to justify most of his claimed fees. As defendants point out, essentially word for word, day for day, and nearly hour for hour, his reconstructed time record duplicates that of Mr. Neville. Thus, for example, Mr. Neville's time record for July 1, 1992, claims 5.75 hours were spent in "Prep. Of Eddie Read's an. to int." Judge Howse claims three hours on the same day for the same work. For July 2, 1992, both Mr. Neville and Judge Howse claim four hours for "Prep. Of Conrad Worill's ans. to int." and four more hours for "Prep. Of T. Black's ans. to int." On February 4, 6, and 7, 1992, each of them claims almost the same amount of time (17.50 and 18 hours) for legal research. While duplication of meetings with co-counsel can probably be justified, that amounts to 106.5 hours. With regard to the rest, while a court may base a fee award at least in part on reconstructed time records, the record in this case is not a plausible reconstruction. Accordingly, Judge Howse will be compensated for 146.5 hours.

In summary, this court awards fees as follows:

---

5. Defendants have not challenged hours claimed by these attorneys in the 1992 period apart from Mr. Howse's reconstruction of his hours. I note, however, that for February, 1992, Mr. Neville records that he spent 20.25 hours drafting the original complaint and 40 hours drafting the first amended complaint in April 1992. For this same period, Mr. Pincham records that he spent 16 hours drafting the April 1992 amended complaint. Mr. Howse claims that he spent five hours draft-

ing the February, 1992 complaint and 30.5 hours drafting the April, 1992 amended complaint. That is a total of over 25 hours spent between two lawyers drafting the original complaint and 81 hours by three lawyers all saying they drafted the first amended complaint. The joint amended complaint, referred to in the text, was filed by Mr. Miner after the dismissal of the April 1992 amended complaint.

| | |
|---|---|
| Miner, Barnhill & Galland | $5,127,994.42 |
| Gessler, Hughes & Socol | 859,275.13 |
| Bridget Arimond | 187,051.39 |
| R. Eugene Pincham | 319,881.25 |
| P. Scott Neville | 191,840.00 |
| Nathaniel Howse, Jr. | 42,485.00 |
| Miller, Shakman, Hamilton, Kurtzon | 6,755.00 |

In addition, plaintiffs claim non-taxable expenses in the amount of $526,472.54 for the Miner firm and $10,003.95 for the Gessler firm. Defendants' only objection is that the back-up documentation was not submitted to the court. (It was, in plaintiffs' reply.) But defendants do not contest that the material was supplied to them and despite having had the material for months, they did not object to any particular item. The expenses sought are therefore allowed.