Clinton A. **KRISLOV** and Joan A. Sullivan, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Wanda L. **REDNOUR,** Chairman of the State Board of Elections; Hannelore Huisman, Vice Chairman of the State Board of Elections; Ronald D. Michaelson, Executive Director of the State Board of Elections; and Kenneth R. Boyle, Judith A. Jones, Mitchell P. Kobelinski, David E. Murray, Langdon D. Neal, and Theresa M. Petrone, Members of the State Board of Elections, Defendants.

No. 96 C 674.

United States District Court, N.D. Illinois, Eastern Division.

April 21, 2000.

Clinton A. Krislov, Krislov & Assoc., Ltd., Chicago, IL, William Bogot, Chicago, IL, for plaintiffs.

Gary M. Griffin, Illinois Attorney General's Office, Chicago, IL, Andrew Neal Levine, O'Rourke, McCloskey & Moody, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

In 1996, Clinton Krislov ran for the Democratic party's nomination as a U.S. Senator, while Joan Sullivan sought nomination as a Representative in the U.S. House of Representatives. Pursuant to the Illinois Election Code, as administered by the Illinois State Board of Elections, to be placed on the primary ballot, a candidate must gather a requisite number of valid nominating signatures. The plaintiffs' nominating petitions contained more than the requisite number of signatures, but objectors challenged the validity of these signatures on various grounds set forth in the Election Code, including that the circulators that collected signatures on the petitions were not registered voters in the political division the plaintiffs were seeking nomination.

Fighting these objections consumed time and resources; Mr. Krislov withdrew from the race, and Ms. Sullivan lost her bid for the nomination. As a result, Mr. Krislov brought this action, alleging that certain provisions of the Illinois Election Code and certain procedures and practices of the State Board of Elections violated their First and Fourteenth Amendment Rights. Joan Sullivan was added as a named plaintiff in the Amended Class Action Complaint which sought class-wide declaratory and injunctive relief pursuant to 42 U.S.C. § 1983.

■ I granted the plaintiffs' motion for class certification but dismissed some of their claims. The parties thereafter settled all but one of the claims. On July 7, 1999, after the Supreme Court ruled on a very similar case, I granted summary judgment for the plaintiffs on the issue that the Election Code's requirement that a petition circulator be a registered voter in the candidate's political division is unconstitutional. Based on the grant of summary judgment, the plaintiffs move here for attorneys' fees and costs under 42 U.S.C. § 1988.[1] The defendants object claiming, first, that Mr. Krislov is not entitled to any fees because he represented himself, and second, that the attorneys' fees and costs sought are unreasonable.

### I.

The defendants argue that the plaintiffs are not entitled to any attorneys' fees because Mr. Krislov essentially represented himself in this lawsuit, which they deem a class action in name only. The defendants claim that there was limited contact with the other plaintiffs—including Ms. Sullivan, none of whom were ever contacted regarding dispositive motions or settlement negotiations. According to the de-

1. On March 10, 2000, Krislov & Associates presented to my chambers a letter with attachments in further support of its motion. Its time for reply was long over, and it did not seek leave to file this additional information, nor did it file with the clerk of court or provide a notice of service swearing that it was served on opposing counsel. This is improper, and it will not be considered.

fendants, Mr. Krislov was the only plaintiff who suffered actual harm or was involved in the lawsuit in any meaningful manner. Because Mr. Krislov's own firm represented him and the "plaintiff class," the defendants claim that no attorneys' fees may be awarded. They rely upon *Kay v. Ehrler*, 499 U.S. 432, 438, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991), in which the Supreme Court held that an attorney who, representing himself, successfully challenged a Kentucky ballot restriction statute was not entitled to attorneys' fees under the fee provision of 42 U.S.C. § 1988.

The plaintiffs first claim *Kay* does not apply because Krislov & Associates, not Mr. Krislov himself, was counsel in this litigation. This argument, that Mr. Krislov should be treated separately from the law firm that bears his name, and in which he is the only partner, is unconvincing. It is impossible to believe that Mr. Krislov was not calling the shots in this lawsuit, and he admits as much in the affidavit submitted along with the fee petition. Next, plaintiffs argue that the *Kay* rule does not apply where, as here, an attorney represents himself *and* other parties to the litigation. They rely upon *Schneider v. Colegio De Abogados De Puerto Rico*, 187 F.3d 30 (1st Cir.1999), in which the First Circuit distinguished *Kay* and granted attorneys' fees to a plaintiff who represented himself and another attorney in a lawsuit which succeeded in invalidating the use of bar dues for ideological purposes by the mandatory bar of Puerto Rico. In so holding, the court stated:

> The first question is whether any fees should be awarded in light of the fact that attorney Schneider was a plaintiff as well as counsel. Here, Ramos is a plaintiff and Schneider also represented Ramos; the fees incurred by plaintiffs are essentially the same whether or not Schneider was also a plaintiff.... Thus, in our view, the prohibition in *Kay* against awarding attorney's fees to an attorney pro se litigant does not apply. *Schneider*, 187 F.3d at 32.

■ The Court's holding in *Kay*, which creates a limited exception to the general policy in favor of recovery of attorneys' fees, is narrow: a *pro se* plaintiff, even one who is an attorney, is not entitled to an award of attorneys' fees under 42 U.S.C. § 1988. *Kay v. Ehrler*, 499 U.S. 432, 438, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991). Mr. Krislov was not a pro se plaintiff, so *Kay* does not control here. Were he the only plaintiff, he would be entitled to no attorneys' fees under *Kay*, but Ms. Sullivan is also a named plaintiff, the plaintiff class was certified, and Krislov & Associates was deemed adequate class counsel. The *Kay* Court stated that "the word 'attorney' assumes an agency relationship as the predicate for an award under § 1988." *Id.* at 436, 111 S.Ct. 1435. Here, an attorney relationship existed between Mr. Krislov, Ms. Sullivan, and the rest of the plaintiff class, so the predicate is met.

■ As to defendants' argument that this case has always been about only one plaintiff, Mr. Clinton Krislov, it is true that Mr. Krislov instituted this action because of events which occurred during his primary campaign, and he was the most obviously harmed by the restrictions. Nonetheless, he was not proceeding pro se. *Oxendine v. Williams*, 509 F.2d 1405 (4th Cir.1975) (a pro se plaintiff cannot bring a class action). Moreover, his actions have changed the process for becoming a candidate and presumably opened up the democratic process. To this extent, Mr. Krislov has done a service to the citizens of Illinois, who may have been harmed either because they wished to run for office or because their choices were limited by these procedures. It is well-established that a prevailing plaintiff under civil rights legislation should receive attorneys' fees almost as a matter of course. *Bond v. Stanton*, 630 F.2d 1231, 1233 (7th Cir.1980) (quoting Davis v. Murphy, 587 F.2d 362, 364 (7th Cir.1978)). The Supreme Court has previously recognized that Congressional policy favors private enforcement of

civil rights acts and mandates a liberal construction of attorney's fee statutes. *Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). I doubt the Court intended to extend *Kay* to prohibit attorneys' fees in all situations where an attorney-client relationship exists, but the attorney also has a personal interest in the outcome of the case and any fees awarded. I therefore conclude that *Kay* does not preclude the plaintiffs from recovering reasonable attorneys' fees.[2]

## II.

■ Having determined that Mr. Krislov may seek attorneys' fees, I must now determine what award is appropriate. As a threshold matter, a party prevails for purposes of 42 U.S.C. § 1988 if it succeeds on a "significant issue in the litigation which achieves some of the benefits the plaintiffs sought in bringing suit." *Zabkowicz v. West Bend Co.*, 789 F.2d 540, 548 (7th Cir.1986). As I stated above, the plaintiffs, having won summary judgment, have prevailed on a significant issue of constitutional law and achieved a vindication of civil rights for the benefit of voters and candidates in Illinois. As such, they are entitled to their reasonable attorneys' fees.[3]

■ To calculate attorneys' fees under Section 1988, I begin with the number of hours reasonably expended on the case multiplied by a reasonable hourly rate, then look to other factors[4] which may lead to an upward or downward adjustment of the fee. *Hensley v. Eckerhart*, 461 U.S. at 433–37, 103 S.Ct. 1933; *Gekas v. Attorney Registration & Disciplinary Comm'n*, 793 F.2d 846, 851–52 (7th Cir.1986). The defendants object to the hourly rates charged, the hours expended, and the costs incurred by the plaintiffs' attorneys.

### A. Rates

■ Reasonable hourly rates for attorneys' fees awarded under § 1988 are "based on market rates for services rendered." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir.1993). The market rate is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 519 (7th Cir.1993) (citation omitted). The burden of proving the market rate is on the plaintiff, although once an attorney provides evidence establishing his market rate, the defendant then must demonstrate why a lower rate should be awarded. *See People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1313 (7th Cir.1996). In support of the hourly rates sought by counsel, the plaintiffs offer the Krislov & Associates firm and attorney biography, Mr. Krislov's affidavit, a letter to a client which includes certain billing rates, and a chart from a 1998 article citing ranges of billing rates purportedly charged by attorneys at

---

**2.** However, Mr. Krislov can only recover his time spent as an attorney, not related to his role as a party. *See Shakman v. Democratic Organization of Cook County*, 634 F.Supp. 895 (N.D.Ill.1986) (disallowed that portion of the lawyer's fee request for time spent by the lawyer as a witness in the litigation and for time spent counseling present and former employees of the defendants about possible violations of a consent decree entered in the action.)

**3.** The parties agreed on attorneys' fees for the settled issues, and plaintiffs seek only the fees related to this issue.

**4.** These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, at 461 U.S. at 430, n. 3, 103 S.Ct. 1933. (citations omitted).

Chicago's largest firms. I address this evidence in turn.

According to its firm biography, Krislov & Associates specializes in "complex class and derivative litigation, nationwide consumer, securities, municipal finance and pension matters."[5] Initially, I note that there is no mention of election law or voting rights litigation. The firm biography also includes information about the attorneys who currently work at Krislov & Associates. However, three of the attorneys for whom the plaintiffs seek fees are not included in this biography, nor does Mr. Krislov's affidavit provide any information about these attorneys or otherwise describe the work performed by his firm.

Evidence of an attorney's market rate may also include evidence of fee awards the attorney has received in similar cases. *See People Who Care*, 90 F.3d at 1310, 1312. In his affidavit, Mr. Krislov describes his practice as primarily one which operates on a contingency-fee basis, but plaintiffs do not provide evidence of any fee awarded to Mr. Krislov or his associates. Instead, Mr. Krislov presents, as evidence of his firm's actual billing rate, a May 1997 letter to a pension fund client which lists time expended for a two and one-half month period and hourly rates for Mr. Krislov of $425, Mr. Stein of $200, and Ms. O'Sullivan of $100; the rates sought in this case for these individuals are $465, $275, and $200, respectively. I consider this letter's contents but do not find it conclusive. Admittedly, an "attorney's ac-

tual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir.1993). In this case, however, the attorneys assert that their established billing rates are higher than the rates they billed their client. Moreover, the work referred to in this letter is not comparable to the work required in the instant case. Instead, the letter is in regard to an engagement in the firm's specialty of suing pension funds, not election law or a constitutional attack on a statute.[6] Nor do I know if the client actually paid this amount, nor, again, does the letter identify the billing rates of any other Krislov attorneys who worked on this case.

Finally, I do not find at all convincing the chart from an Illinois Legal Times article, which apparently summarizes a range of billing rates charged by the largest firms in the nation. The plaintiffs do not provide the entire article for context, and I cannot speculate as to how these rates relate to a firm the size of Mr. Krislov's. In addition, competing conclusions may be drawn from the survey, which presents a range of the rates charged by partners and associates "billing high" and "billing low." One possible conclusion is that propagated by the plaintiffs, that Mr. Krislov should be billed out as high as the most well-paid partners in the City of Chicago,[7] and his associates higher than any of their "big-firm" counterparts. The other is that the rates claimed here are grossly excessive. For example, at the global law firm of Baker & McKenzie,

---

5. Specific practice areas include: (1) government mismanagement, fraud and corruption (i.e. derivative actions against governmental units to correct under-funded pension systems), (2) consumer protection, (3) securities, (3) mass tort litigation, (4) partnership rollup litigation, and (5) major tax litigation.

6. Although opportunity cost may be considered in market rate determinations, it is significant that Mr. Krislov undertook this matter not on a purely pro bono or public interest basis but in some real sense on his own behalf. Therefore, he should not be automatically rewarded at the taxpayers' expense be-

cause he might have earned a much higher attorney fee by representing his more typical clients, which is uncertain in any event.

7. I daresay that these partners are compensated so well only in their unique areas of specialization, as Mr. Krislov may be as well, for all I know. However, I doubt that any of these firms' clients would pay a $400 hourly rate, for example, for a tax partner to draft a contract or head a litigation team. This is akin to Mr. Krislov's request to be paid at the top of the market for work that does not fit within his particular area of expertise.

partner billing rates range from $250 to $395 per hour and associates from $140 to $250. At a firm more comparable to his in size, the rates were between $120 and $200 for partners and $96 and $130 for associates.[8]

Accordingly, I find that the plaintiffs have failed to support the hourly rates claimed in their fee petition. In particular, the plaintiffs' fee petition is devoid of *any* biographical information relevant to determining an appropriate hourly rate for Stephanie Simmons, Colleen O'Sullivan, Sara Weisenthal, or either of the two paralegals. Plaintiffs have provided nothing about the backgrounds of these individuals, even such basics as what year they entered the bar, significant cases, or areas of practice. Having reviewed the docket, I note that Stephanie Simmons made an early appearance in this case, so I presume she is an attorney licensed to practice in Illinois. Colleen O'Sullivan is mentioned once in the previously described client letter, which identified her as a "clerk", so I presume that she was a law student or not a member of the bar in 1997, yet according to the billing records, Ms. O'Sullivan worked on this case from March 1996 until October 1997.

The defendants offer the affidavits of A.L. Zimmer, an attorney and the General Counsel for the Illinois State Board of Elections since 1986, and Carl R. Draper, a Springfield attorney who practices administrative and election law. Both claim that the typical billing rates for lawyers practicing election law is between $150 and $200 per hour. Mr. Zimmer claims that the rates claimed by Krislov and Bogot "are excessive measured by election law standards, their level of experience, and the relative ease of making the case they presented." Mr. Zimmer also questions the Krislov firm's expertise in Illinois election law and points out a similar case in which a court awarded a $100 rate for attorneys' fees. Mr. Zimmer also notes

that the Krislov firm did not cite the Tenth Circuit opinion which was upheld in *Buckley v. American Constitutional Law Foundation,* 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999), which formed the basis for the issue upon which summary judgment was granted in this case. Election-law practitioner Mr. Draper largely concurs and adds that he charged and was awarded $110 per hour for an election law case which eventually landed in the Illinois Supreme Court, *Lucas v. Lakin,* 175 Ill.2d 166, 221 Ill.Dec. 834, 676 N.E.2d 637 (1997).

 "If the court is unable to determine the attorney's true billing rate, however (because he maintains a contingent fee or public interest practice, for example), then the court should look to the next best evidence-the rate charged by lawyers in the community of 'reasonably comparable skill, experience, and reputation.'" *People Who Care,* 90 F.3d 1307, 1310 (7th Cir.1996) (*quoting Blum v. Stenson,* 465 U.S. 886, 892, 895 n. 11, 104 S.Ct. 1541). Having recently awarded fees in a voting rights case in *Barnett v. City of Chicago,* 2000 WL 263982, No. 92 C 1683(N.D.Ill.2000), I am not without some guide as to the rates qualified attorneys in this field have been awarded. In *Barnett,* the lead plaintiffs' attorneys were from the law firm of Miner, Barnhill and Galland ("MBG"), a law firm comparable to Krislov & Associates in size where much of their fees are also generated on a contingency basis. However, MBG specializes in class-action civil rights litigation, including voting rights law, and thus its attorneys were well suited to represent the plaintiffs. MBG has an excellent professional reputation and performed well in my courtroom. Importantly, to support their fee petition, MBG provided detailed affidavits from Mr. Miner, lead counsel on the engagement, as well as from each attorney explaining the attorney's role in the litigation. MBG also provided a curriculum vitae for each attor-

---

**8.** Granted, this is a 1998 survey, but Mr. Krislov did not include a more recent one, and I have no information as to the inflation of such rates since that time.

ney with detailed information about that attorney's background, legal experience—including cases, and previous fee awards. The *Barnett* case also presented much more complicated legal and factual issues. As plaintiffs are aware, the class certification in this case was largely uncontested by the Illinois Board of Elections; in fact, the reason for the summary judgment grant on the petition circulator· issue was due to a Supreme Court ruling in a similar case.

 Using the MBG attorneys as a benchmark, I award plaintiffs' attorneys the following hourly rates. I will allow Mr. Krislov to recover the same hourly rate awarded to Judson Miner of $325, since Mr. Krislov, like Mr. Miner, spearheaded the litigation. MBG's Steven Mange, an attorney who received his law degree in 1995 from New York University, received $175 per hour, so I will permit Mr. Bogot—who graduated in the same year and worked a great deal on this case—to recover the same hourly rate. Mr. Stein, who graduated the prior year but only billed an hour to this case, can also recover $175 per hour. I believe that these rates are more than reasonable in light of counsel's skill and experience and prevailing market rates. I am tempted to disallow all fees for the attorneys not described by the plaintiffs, but since the defendants do not contest the entire rate, and because I took the liberty of verifying in Sullivan's Legal Directory that these individuals are in fact Illinois attorneys, I will permit the plaintiffs to recover the $150 hourly rate that the defendants declare is reasonable for Stephanie Simmons and Sara Weisenthal. As to Colleen O'Sullivan, the plaintiffs failed to disclose that she was not an attorney and in fact implied that she was an attorney during her work on this litigation. Therefore, I will not permit the plaintiffs to recover for her services. I will allow the paralegal charges but only at the rate awarded in *Barnett* of $75 per hour.

## B. *Hours Expended*

 Having determined the appropriate hourly rates the attorneys may seek, I now address the issue of the hours actually spent, and decide whether to adjust them up or down based on the *Hensley* factors. The standard for determining whether hours are adequately documented is whether the time records "taken in context" enable the reviewing court to identify "the substance of the work done." *Berberena v. Coler,* 753 F.2d 629, 634 (7th Cir.1985). To determine the number of hours reasonably spent, I must first determine the number of hours actually spent and then subtract from that figure hours which were duplicative, excessive, inadequately documented, or otherwise unnecessary. *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933.

 Defendants object to all but a short list of time entries, claiming most were unrelated to the constitutionality of the Illinois Election Code provision requiring a petition circulation to be a registered voter in the candidate's district. In the settlement agreement, the parties reserved the plaintiff's ability to seek fees for this pending issue, if they prevailed, which they ultimately did. Therefore, I will award plaintiff's fees for the time required to bring this issue to successful resolution. Time spent preparing the complaint, certifying the class, and otherwise moving the case along is inseparable from the issue and will generally be included in the fee award.

 Upon review, I find most of the hours expended reasonable for the tasks described. However, I have deducted the time spent for entries: 32272, 37381, 33442, 31958, 31957, 42265, 57682, as either unnecessary, unrelated to the constitutional issue, or with descriptions too vague to determine what the time related to. For example, Mr. Krislov's entry on February 27, 1996 for 1.5 hours was described as follows: "Phone call with Mike Kreloff, discuss case with EA, call from Les–Low

Taxes Golden." I do not know who Mr. Kreloff, EA, or Les–Low Taxes Golden are or what their relationship is to this case, so I disallow the time. The other entries are similarly vague or excessive.

## C. *Expenses*

■ Plaintiffs initially requested $21,055.66 in its fee petition and Joint Statement of Agreed and Contested Matters with respect to the plaintiffs' motion for fees and expenses. After review of online research charges, this figure has been reduced to $8,095. Plaintiffs attach a monthly Westlaw summary of charges which identify each day's entry by "Elections" or some similar identification. Although I generally permit reasonable charges for on-line legal research, there is no indication of what issues were researched. Without such information, I cannot analyze these charges for duplicative efforts or reasonableness, so I must deny the charges.

Plaintiffs also seek to recover copying and library charges, as well as cabs to and from court. Defendants object that these expenses are overhead and unsupported by receipts. In *Kossman v. Calumet County,* 849 F.2d 1027, 1031 (7th Cir.1988), the Seventh Circuit stated that "expenses of litigation that are distinct from either statutory costs or the costs of the lawyer's time reflected in his hourly billing rates— expenses for such things as postage, long distance calls, xeroxing, travel, paralegals, and expert witnesses—are part of the reasonable attorneys' fees allowed by [federal civil rights statutes]." *See also Heiar v. Crawford County, Wisconsin,* 746 F.2d 1190, 1203 (7th Cir.1984).

■ The plaintiffs also seek costs for certain research and copying expenses; again, these are generally reimbursable, but are not adequately described. The entries in questions merely state "research election code and copies" and "cases at

Daley center." To collect for copying expenses, parties must typically provide the number of pages copies and the price per page. No such information is provided, so plaintiffs may not recover for these costs. I agree with my colleague Judge Grady regarding cab fares within Chicago's "loop". *Washington v. Pierce,* 576 F.Supp. 473, 476 (N.D.Ill.1983) ("If the client is willing to pay his lawyer's taxi fares, that is between them. But I do not believe taxi fares are properly assessable against the losing party in addition to the hourly rate assessed for the time in transit.") The offices of Krislov & Associates are 3 blocks away from my courtroom. This issue did not go to trial, so there was no reason to haul exhibits or boxes which might have required a taxicab. Therefore, the unsubstantiated cab fares are denied.

### *Conclusion*

I therefore award attorneys' fees in the amount of $40,761.25, as follows:

| Attorney | Rate | Hours | Fees |
|---|---|---|---|
| Krislov | 325 | 24.8 | $ 8,060.00 |
| Bogot | 175 | 95.05 | $16,633.75 |
| Simmons | 150 | 95.4 | $14,310.00 |
| Stein | 175 | 1 | $ 175.00 |
| Weisenthal | 150 | 2.8 | ·$ 420.00 |
| Stone | ·75 | 0.8 | $ 60.00 |
| Laramore | 75 | 0.7 | $ 52.50 |
| Total | | 220.55 | $39,711.25 |

Defendants are also ordered to reimburse the plaintiffs for the $120 fee to file the complaint.